FILED
2021 May-13 PM 06:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION

| | |
|---|---|
| **STATE OF WEST VIRGINIA**, by and through Patrick Morrisey, Attorney General of the State of West Virginia; **STATE OF ALABAMA**, by and through Steve Marshall, Attorney General of the State of Alabama; **STATE OF ARKANSAS**, by and through Leslie Rutledge, Attorney General of the State of Arkansas; **STATE OF ALASKA**, by and through Treg R. Taylor, Attorney General of the State of Alaska; **STATE OF FLORIDA**, by and through Ashley Moody, Attorney General of the State of Florida; **STATE OF IOWA**; **STATE OF KANSAS**, by and through Derek Schmidt, Attorney General of the State of Kansas; **STATE OF MONTANA**, by and through Austin Knudsen, Attorney General of the State of Montana; **STATE OF NEW HAMPSHIRE**; **STATE OF OKLAHOMA**, by and through Mike Hunter, Attorney General of the State of Oklahoma; **STATE OF SOUTH CAROLINA**, by and through Alan Wilson, Attorney General of the State of South Carolina; **STATE OF SOUTH DAKOTA**, by and through Jason R. Ravnsborg, Attorney General of the State of South Dakota; and **STATE OF UTAH**, by and through Sean Reyes, Attorney General of the State of Utah, <br><br> Plaintiffs, <br> v. <br> **UNITED STATES DEPARTMENT OF THE TREASURY**; <br><br> **JANET YELLEN**, in her official capacity as the Secretary of the Department of the Treasury; and <br><br> **RICHARD K. DELMAR**, in his official capacity as acting inspector general of the Department of the Treasury, <br><br> Defendants. | Case No. 7:21-cv-00465-LSC <br><br> **PROPOSED INTERVENOR-PLAINTIFF WISCONSIN LEGISLATURE'S COMBINED OPPOSED MOTION TO INTERVENE AS PLAINTIFF AND MEMORANDUM IN SUPPORT** |

# MOTION TO INTERVENE AS PLAINTIFF

Proposed Intervenor-Plaintiff Wisconsin Legislature ("Legislature"), hereby moves to intervene in this matter, under Federal Rule of Civil Procedure 24, to join Plaintiffs' challenge to the "Federal Tax Mandate" in the American Rescue Plan Act of 2021, *see* Pub. L. No. 117-2, § 9901, 135 Stat. 4 (enacting § 602(c)(2)(A) to the Social Security Act, 42 U.S.C. § 801 *et seq.*). Counsel for the Legislature has conferred with counsel for the parties. Plaintiff States consent to the Legislature's intervention. Defendants have not yet determined their position on this motion, and have conveyed to the Legislature that they intend to respond, in writing, after the filing of this Motion.

As explained further in the incorporated Memorandum In Support, the Legislature meets all requirements to intervene as a matter of right under Rule 24(a) because: (1) this motion to intervene is timely; (2) it has a significant protectable interest relating to the subject matter of the suit; (3) which may be impaired by the disposition of this case; and (4) no other parties sufficiently represent the Legislature's particular interests.

In the event the Legislature is not granted intervention by right, it respectfully requests permission to intervene under Federal Rule of Civil Procedure 24(b)(1)(B). The Legislature's claims share common issues of law and fact with the underlying

suit and directly challenge the actions of Defendants on grounds similar to those raised by Plaintiffs.

In support of this Motion, the Legislature submits (1) a Proposed Complaint In Intervention, **Exhibit A**, and (2) a Proposed Motion To Join In Plaintiffs' Motion For A Preliminary Injunction, **Exhibit B**.


Respectfully submitted,

| | |
|---|---|
| /s/J. Houston Shaner | |
| J. HOUSTON SHANER | MISHA TSEYTLIN* |
| *Local Counsel* | *Counsel of Record* |
| TROUTMAN PEPPER | SEAN T.H. DUTTON* |
| HAMILTON SANDERS LLP | TROUTMAN PEPPER |
| 600 Peachtree Street, N.E. | HAMILTON SANDERS LLP |
| Suite 3000 | 227 West Monroe Street |
| Atlanta, GA 30308 | Suite 3900 |
| Telephone: (404) 885-3909 | Chicago, IL 60606 |
| Facsimile: (404) 885-3900 | Telephone: (608) 999-1240 |
| houston.shaner@troutman.com | Facsimile: (312) 759-1939 |
| | misha.tseytlin@troutman.com |
| | sean.dutton@troutman.com |

\* *Pro hac vice* motion forthcoming

*Counsel for Proposed Intervenor the Wisconsin Legislature*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1
STATEMENT OF INTERESTS...............................................................................3
ARGUMENT ..............................................................................................................4
   I.  The Legislature May Intervene As Of Right......................................................4
      A. This Motion To Intervene Is Timely ........................................................5
      B. The Legislature Has A Direct And Significant Interest In The Enforcement Of The Mandate ....................................................................6
      C. The Legislature's Ability To Protect Its Interests, As A Practical Matter, May Be Impeded By The Disposition Of This Action ..................9
      D. The Existing Parties Do Not Adequately Represent the Legislature's Interests.................................................................................................10
   II.  Alternatively, This Court Should Permit The Legislature To Intervene Permissively........................................................................................................11
CONCLUSION ........................................................................................................12

# INTRODUCTION

Proposed Intervenor Wisconsin Legislature ("Legislature") respectfully seeks leave to intervene as a plaintiff in the above-captioned matter under Federal Rule of Civil Procedure 24, to protect the interests of the State of Wisconsin and its Legislature in the challenge to the "Federal Tax Mandate" ("Mandate") portion of the American Rescue Plan Act of 2021. Plaintiffs have sought judgment and preliminary injunctive relief holding the Mandate unconstitutional, on the grounds that it violates the Tenth Amendment to the United States Constitution under the Supreme Court's constitutional-spending and anti-commandeering doctrines. *See* Dkt. 1 ¶¶ 101–128. As further described below, the Legislature, both as an agent speaking here for the State of Wisconsin and as a constitutional body under the Wisconsin Constitution, has a direct and substantial interest in the cessation of the unconstitutional Mandate, and raises the same challenges to that Mandate.

*First*, the Legislature is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a). This motion is timely, filed before Defendants answered the Complaint, within this Court's briefing schedule on Plaintiffs' Motion For Preliminary Injunction, and well before any discovery has begun, so no parties will suffer any prejudice from the Legislature's involvement. The Legislature, both as an agent for the State of Wisconsin with the authority to speak for the State's interest in court, Wis. Stat. § 803.09(2m), and as Wisconsin's constitutionally authorized

body for passing tax legislation, clearly maintains an interest in this litigation, as the Mandate seemingly bars Wisconsin from passing any tax relief for its citizens for approximately three years. Indeed, the Mandate is so ambiguous that it is uncertain what tax relief, if any, the Legislature is permitted to pass, which confusion deeply harms its sovereign dignity. Failure to allow the Legislature to intervene here will impair these critical sovereign interests if an injunction that this Court issues is ultimately geographically limited to just Plaintiff States. Finally, the existing parties do not represent these interests because Defendants are diametrically opposed and Plaintiffs have neither the specific interests nor institutional knowledge that the Legislature maintains regarding Wisconsin law, taxes, and the needs of Wisconsinites.

*Second*, and notwithstanding the Legislature's forceful showing on intervention of right, if this Court disagrees, it should permit the Legislature to intervene under Rule 24(b). Under this Rule, the Legislature need only show that its claims share a common question of law or fact with the main action, and that intervention will not unduly prejudice the parties. Here, as further discussed in the Proposed Complaint In Intervention, attached as **Exhibit 1**, the Legislature will argue that the Mandate violates the Tenth Amendment to the United States Constitution in multiple respects because it is coercive and commandeering of state sovereign authority. Therefore, the Legislature's claim undoubtedly shares with this

lawsuit multiple common questions of law and fact. Finally, the Legislature's Motion is timely and imposes no prejudice upon any party, especially in light of the Legislature's complete willingness to comply with all of this Court's scheduling and briefing orders. Further, the Legislature intends to take all steps to minimize its practical role in this litigation, and sincerely hopes that it can simply join all of the future joint filings by the Plaintiff States.

## STATEMENT OF INTERESTS

The Wisconsin Legislature is composed of the State Assembly and the State Senate. *See* Wis. Const. art. IV, § 1. Wisconsin law recognizes that the Legislature, as the body "vested" with the "legislative power," *id.*, has an interest in defending the State's own sovereign interest in state law in court, including the State's sovereign interest in the validity of state law. Specifically, Section 803.09(2m) of the Wisconsin Statutes states that "the legislature may intervene" in a lawsuit in defense of state law. Wis. Stat. § 803.09(2m). Section 13.365(3), in turn, states that the Legislature's "joint committee on legislative organization may intervene at any time in the action on behalf of the legislature" and authorizes the hiring of counsel other than the Attorney General. Wis. Stat. § 13.365(3). Under these statutes, "the Legislature has the authority to represent the State of Wisconsin's interest in the validity of state laws." *Democratic Nat'l Comm. v. Bostelmann*, 949 N.W.2d 423, 424 (Wis. 2020); *see also Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639,

- 3 -

641 (7th Cir. 2020) (per curiam) ("Legislature indeed has that authority."); *accord Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).

## ARGUMENT

### I. The Legislature May Intervene As Of Right

A party is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) when it has an "interest in the subject matter of the litigation [that] is direct, substantial and legally protectable." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002). A party seeking intervention as of right must show, (1) "[o]n timely application," Fed. R. Civ. P. 24(a), that (2) "it has an interest in the subject matter of the suit," (3) "its ability to protect that interest may be impaired by the disposition of the suit," and (4) existing parties in the suit cannot adequately protect that interest," *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (citation omitted). Although the Legislature maintains the burden to show that it has met these intervention elements, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1341 n.9 (11th Cir. 1999) (alteration in original; citation omitted). Here, the Legislature meets all of Rule 24(a)(2)'s mandatory intervention requirements.

### A. This Motion To Intervene Is Timely

The Legislature's motion is timely.

To decide if a motion to intervene is timely—a threshold factor that must be satisfied, *NAACP v. New York*, 413 U.S. 345, 365 (1973)—the Court considers four factors: (1) the period of time during which the intervenor knew of its interest in the suit before petitioning for intervention; (2) any prejudice the resulting delay might cause the existing parties; (3) any prejudice denial of intervention would cause the intervenor to suffer; and (4) "the existence of unusual circumstances weighing for or against a determination of timeliness." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019).

Here, the Legislature moves to intervene approximately six weeks after Plaintiffs filed their Complaint, *see* Dkt. 1, and roughly one month after Defendants filed their Motion For Preliminary Injunction, Dkt. 21. Discovery has not yet begun, and this Court has "yet to take significant action." *Georgia*, 302 F.3d at 1259–60; *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Furthermore, intervention will not "delay the proceedings," *Georgia*, 302 F.3d at 1259–60, or keep the case from continuing "as scheduled without any delay," *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017), as the Legislature intends file its Complaint In Intervention, *see* **Exhibit A**, raising the same claims as Plaintiffs, Dkt. 1, and a Motion For Preliminary Injunction, *see*

**Exhibit B**, which simply incorporates Plaintiffs' pending Motion For Preliminary Injunction, Dkt. 21, as all the same arguments support injunctive relief for the Legislature. Finally, there are no special factors or unusual circumstances affecting the timeliness determination of which the Legislature is aware. *Advance Local Media*, 918 F.3d at 1172–73.

> **B.** **The Legislature Has A Direct And Significant Interest In The Enforcement Of The Mandate**

A proposed intervenor also must "claim[ ] an interest relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2), which interest the Eleventh Circuit has required to be "direct, substantial, [and] legally protectable," beyond a mere generalized grievance, *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). This requirement is met when a party simply shows "a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971), *superseded by statute on other grounds as recognized in Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985).

In the Mandate, Congress explicitly conditioned States' receipt of federal funds upon a State's agreement not to adopt any "change in law, regulation, or administrative interpretation" that, "either directly or indirectly," reduces income to the State for over three years. Pub. L. No. 117-2 § 9901, 135 Stat. 4 (enacting 42 U.S.C. § 602(c)(2)). Therefore, the Mandate serves to proscribe the State of Wisconsin's ability to make policy choices that have the "direct[ ] or indirect[ ]"

effect of reducing state income, including by enacting tax cuts, for a period of multiple years. *Id.* The Mandate is also impermissibly vague, not informing the Legislature what taxes (if any) it can cut, which harms the sovereign dignity of the State of Wisconsin and its Legislature. Indeed, the Mandate fails to allow the Legislature any ability to "make an informed choice" regarding the "conditions" it placed on COVID-19 relief funds. *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004).

The Legislature maintains a significant interest in defending Wisconsin laws in court, on behalf of the State of Wisconsin, including by intervening in an ongoing federal action to protect Wisconsin state laws. *See* Wis. Stat. 803.09(2m); *Democratic Nat'l Comm.*, 949 N.W.2d at 424; *Democratic Nat'l Comm.*, 977 F.3d at 641. The Mandate prohibits the Legislature, if it accepts these federal funds, from passing any laws "to either directly or indirectly offset a reduction in the [State's] net tax revenue" within approximately the next three years. 42 U.S.C. § 802(c)(1), (2)(A). Therefore, and in light of the fungibility of money, any law that the Legislature seeks to enact implicating tax relief in that time is potentially subject to this Mandate. And state sovereignty, particularly when a state wishes to "preserv[e] the integrity of its tax system," is "precisely the type of legally protectable interest that has long formed the basis for intervention of right under Rule 24(a)(2)." *Huff v. Comm'r*, 743 F.3d 790, 799 (11th Cir. 2014).

Additionally, the Legislature, as Wisconsin's constitutional branch of government exercising the lawmaking function of the State, is constitutionally empowered "to enact legislation," *Flynn v. Dep't of Admin.*, 576 N.W.2d 245, 255 (Wis. 1998), on "the subjects of taxation and . . . exemptions," *WKBH Television, Inc. v. Wis. Dep't of Revenue*, 250 N.W.2d 290, 294 (Wis. 1977). The Mandate "direct[ly] [and] substantial[ly]" affects, *Purcell*, 85 F.3d at 1512, and impedes that sovereign authority by prohibiting Wisconsin's consideration of any "tax[ ] . . . exemptions" for over three years, if the State accepts this federal funding, *WKBH Television*, 250 N.W.2d at 294; *see also Allegheny Pittsburgh Coal Co. v. Cty. Comm'n of Webster Cty.*, 488 U.S. 336, 344 (1989) ("States, of course, have broad powers to impose and collect taxes."). So, the Legislature's constitutional authority to enact legislation on tax matters is directly implicated by this lawsuit.

For the same reasons, the Legislature has standing to bring claims against Defendants. Here, the Legislature suffers grave injury to its sovereign interests because the Mandate intrudes on its sovereign authority and places state laws at risk of preemption or the withdrawal of federal funds based upon ambiguous and coercive spending conditions. *See Alaska v. U.S. Dep't of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989); *Texas v. United States*, 809 F.3d 134, 155–57 (5th Cir. 2015). Further, the Mandate harms Wisconsin's sovereign dignity by not properly advising the Legislature what laws it can and cannot enact, failing to provide Wisconsin any

"informed choice" about the conditions attendant to accepting these federal funds. *Benning*, 391 F.3d at 1306.  These injuries are directly traceable to Defendants, *see Nat'l All. for the Mentally Ill v. Bd. of Cty. Comm'rs*, 376 F.3d 1292, 1295 (11th Cir. 2004), because the Mandate imposes these ambiguous and coercive spending conditions.  Finally, this Court can redress this harm, *see* **Exhibit B**; Dkt. 21, by enjoining Defendants from enforcing this unconstitutional condition as to Wisconsin, *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015).

    **C.**    **The Legislature's Ability To Protect Its Interests, As A Practical Matter, May Be Impeded By The Disposition Of This Action**

A movant need only show that it would "be practically disadvantaged by [its] exclusion from the proceedings." *Huff*, 743 F.3d at 800.

As explained above, *see supra* Part I.B, the Mandate, if allowed to stand, would greatly restrict the Legislature's ability to pass any needed tax relief for its citizens over the course of the next three years.  *See* Pub. L. No. 117-2 § 9901, 135 Stat. 4.  Therefore, the results of this litigation will directly and "practically" impact the Legislature's future legislative agenda as it pertains to tax policy and relief. *Huff*, 743 F.3d at 800.  And if the Legislature is not permitted to intervene, Wisconsin might be deprived of the benefits of any injunction this Court grants against Defendants' unconstitutional action.  It is not uncommon for a federal court to limit injunctive relief against unlawful government action only to those jurisdictions that

have actively challenged it. *See, e.g.*, *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1370 (S.D. Ga. 2018). This, when combined with the other "practical[ ] disadvantage[s]" of being excluded from the first, largescale, multi-state challenge to Defendants' unconstitutional enactment, suffices to show an impairment of interests necessary for intervention of right. *Huff*, 743 F.3d at 800.

### D. The Existing Parties Do Not Adequately Represent the Legislature's Interests

On the adequacy-of-representation element, the movant's burden is "minimal" and will be satisfied by demonstrating that "representation of [its] interests '*may be*' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added; citation omitted).

No party to the dispute will adequately represent the Legislature's interests, and it has met this "minimal" burden. *Trbovich*, 404 U.S. at 538 n.10. Defendants cannot represent the Legislature's interests because the Legislature and Defendants are diametrically opposed regarding the propriety and constitutionality of the Mandate. Nor can Plaintiffs represent the Legislature's interests., as each Plaintiff is a separate sovereign, presumably primarily concerned with their own States' ability to cut taxes. *See* Dkt. 1 ¶¶ 12–24. And even if Plaintiffs do seek nationwide relief, the Court may choose, as noted above, to limit relief only to those States who are party to the litigation here. *See supra* pp. 9–10.

* * *

For these reasons, the Legislature has met its burden on all four elements of intervention as of right, and the Court should grant this motion.

## II. Alternatively, This Court Should Permit The Legislature To Intervene Permissively

Should the Court conclude that the Legislature is not entitled to intervene as a matter of right, the Legislature respectfully requests that the Court permit it to intervene under Rule 24(b) on a permissive basis. For a timely motion for permissive intervention, all that is necessary is that the intervenor's "claim or defense and the main action have a question of law or fact in common." *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) (citation omitted). The Court should also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

Permissive intervention here is appropriate, as the Legislature meets all requirements. First, as discussed above, the Legislature's motion is timely, as it is filed well before this Court has "take[n] significant action" and will in no way "delay the proceedings." *Georgia*, 302 F.3d at 1259–60. This is particularly true given that the Legislature intends simply to join the existing Plaintiffs' preliminary-injunction briefing, *see* **Exhibit B**, thereby avoiding any duplicative or disruptive filings with the Court. Second, the Legislature claims against Defendants plainly share "a question of law or fact in common" with the "main action." *ManaSota-88*, 896 F.2d

at 1323.  The Legislature joins Plaintiffs' attack on Congress' unconstitutional, ambiguous, and coercive Mandate and, given the claims within Plaintiffs' Complaint, *see generally* Dkt. 1, this places the Legislature's claims directly within the confines of the "main action," *ManaSota-88*, 896 F.2d at 1323.

Finally, the Legislature's willingness to join the existing briefing and abide by all of the Court's existing deadlines and orders avoids entirely any claim of "undu[e] delay or prejudice" to the "original parties' rights." Fed. R. Civ. P. 24(b). The Legislature intends to file the attached, short Motion To Join In Plaintiffs' Motion For A Preliminary Injunction, *see* **Exhibit B**, which expressly joins Plaintiff States' existing briefing on the issue. The Legislature has no intention of duplicating the parties' existing efforts in bringing this case to a prompt resolution, or of imposing upon the Court's resources. Rather, the Legislature is solely interested in ensuring that Wisconsin benefits from any injunctive relief this Court issues. The Legislature is eager to coordinate with the Plaintiff States on collective briefing, if at all possible.

For these reasons, the Legislature respectfully requests the Court to grant it permissive intervention.

## CONCLUSION

The Court should grant the Legislature's Motion To Intervene.

Respectfully submitted,

/s/J. Houston Shaner
J. HOUSTON SHANER
*Local Counsel*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, GA 30308
Telephone: (404) 885-3909
Facsimile: (404) 885-3900
houston.shaner@troutman.com

MISHA TSEYTLIN*
*Counsel of Record*
SEAN T.H. DUTTON*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 West Monroe Street, Suite 3900
Chicago, IL 60606
Telephone: (608) 999-1240
Facsimile: (312) 759-1939
misha.tseytlin@troutman.com
sean.dutton@troutman.com

\* *Pro hac vice* application forthcoming

*Counsel for Proposed Intervenor the Wisconsin Legislature*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2021, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: May 13, 2021

/s/J. Houston Shaner
J. HOUSTON SHANER