# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

|  |  |
|---|---|
| STATE OF WEST VIRGINIA, *et al.*, | Case No. 7:21-cv-00465-LSC |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF THE TREASURY, *et al.*, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO WISCONSIN LEGISLATURE'S
## <u>MOTION TO INTERVENE</u>

# **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................1

BACKGROUND ......................................................................................3

    A.    Statutory Background................................................3

    B.    Factual and Procedural Background......................................7

LEGAL STANDARDS FOR INTERVENTION....................................8

ARGUMENT ..........................................................................................10

    I.    THE WISCONSIN LEGISLATURE IS NOT AUTHORIZED TO REPRESENT THE STATE OF WISCONSIN IN THIS CASE. ..............10

    II.    THE WISCONSIN LEGISLATURE LACKS ARTICLE III STANDING TO BRING THIS ACTION.............................................................12

    III.    THE WISCONSIN LEGISLATURE CANNOT INTERVENE AS OF RIGHT UNDER RULE 24(a). ......................................................16

    IV.    THE COURT SHOULD DENY PERMISSIVE INTERVENTION. .........19

    V.    IN THE ALTERNATIVE, THE COURT SHOULD HOLD THIS MOTION IN ABEYANCE UNTIL IT DECIDES WHETHER THE PLAINTIFF STATES HAVE STANDING.........................................................20

CONCLUSION .......................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Arizona State Legislature v. Arizona Independent Redistricting Commission*,
    576 U.S. 787 (2015) ........................................................................ 14, 15

*Arizona v. Evans*,
    514 U.S. 1 (1995) .................................................................................20

*Babbitt v. Farm Workers*,
    442 U.S. 289 (1979) .............................................................................13

*Burke v. Ocwen Fin. Corp.*,
    833 F. App'x 288 (11th Cir. 2020) ...................................... 17, 18, 19

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) .............................................................................20

*Chiles v. Thornburgh*,
    865 F.2d 1197 (11th Cir. 1989) ..........................................................18

*Clark v. Putnam County*,
    168 F.3d 458 (11th Cir. 1999) ............................................................17

*Democratic Nat'l Comm. v. Bostelmann*,
    949 N.W.2d 423 (Wis. 2020) ..............................................................11

*DHS v. New York*,
    140 S. Ct. 599 (2020) ..........................................................................21

*Dillard v. Chilton Cnty. Comm'n*,
    495 F.3d 1324 (11th Cir. 2007) ............................................................8

*Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*,
    923 F.3d 1295 (11th Cir. 2019) ........................................................................8

*Georgia v. U.S. Army Corps of Engineers*,
    302 F.3d 1242 (11th Cir. 2002) ...................................................................9, 10

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ...................................................................................21

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ........................................................................................10

*Huff v. Commissioner*,
    743 F.3d 790 (11th Cir. 2014) ........................................................................16

*In re W. Caribbean Airways Crew Members*,
    No. 07 22015 CIV, 2010 WL 11601239 (S.D. Fla. Jan. 8, 2010) ...................19

*Kerr v. Hickenlooper*,
    824 F.3d 1207 (10th Cir. 2016) ......................................................................15

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) ...............................................................................8, 12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................12

*Missouri v. Yellen*,
    No. 4:21-cv-376, 2021 WL 1889867 (E.D. Mo. May 11, 2021) .................2, 14

*Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*,
    425 F.3d 1308 (11th Cir. 2005) ...................................................................9, 16

*Planned Parenthood of Wis., Inc. v. Kaul,*
   942 F.3d 793 (7th Cir. 2019) ................................................................12

*Powers v. Ohio,*
   499 U.S. 400 (1991) ...........................................................................10

*Purcell v. BankAtlantic Fin. Corp.,*
   85 F.3d 1508 (11th Cir. 1996) ............................................................10

*Raines v. Byrd,*
   521 U.S. 811 (1997) ...........................................................................15

*Sierra Club, Inc. v. Leavitt,*
   488 F.3d 904 (11th Cir. 2007) .......................................................9, 17

*Stone v. First Union Corp.,*
   371 F.3d 1305 (11th Cir. 2004) ..................................................... 18, 19

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ...........................................................................13

*Town of Chester v. Laroe Ests., Inc.,*
   137 S. Ct. 1645 (2017) ................................................................ 8, 9, 12

*Trump v. Hawaii,*
   138 S. Ct. 2392 (2018) .........................................................................20

*United States v. S. Fla. Water Mgmt. Dist.,*
   922 F.2d 704 (11th Cir. 1991) ..................................................... 10, 16

*Va. House of Delegates v. Bethune-Hill,*
   139 S. Ct. 1945 (2019) ................................................................ 10, 14

*Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*,
929 F.2d 591 (11th Cir. 1991) ........................................................................18

**Statutes**

42 U.S.C. § 801.............................................................................. 3, 4, 8

42 U.S.C. § 802.............................................................................. 4, 5, 6, 7

42 U.S.C. § 803 ..........................................................................................4

42 U.S.C. § 804..........................................................................................4

42 U.S.C. § 805..........................................................................................4

American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4 (2021)................1, 4

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-137,
134 Stat. 281, 501 (2020) ...................................................................3

Wis. Stat. § 165.25(1m)..........................................................................11

Wis. Stat. § 803.09(2m)..........................................................................11

**Rules**

Federal Rule of Civil Procedure 24(a) ..........................................................9, 16

Federal Rule of Civil Procedure 24(b)..........................................................10

**INTRODUCTION**

The Wisconsin Legislature seeks to join this lawsuit brought by thirteen States against the U.S. Department of the Treasury, Secretary of the Treasury Janet Yellen, and Acting Inspector General for the Department of the Treasury Richard K. Delmar. The Wisconsin Legislature is not the State of Wisconsin. Yet like the Plaintiff States, the Wisconsin Legislature seeks a Court order and preliminary injunction declaring as unconstitutional a provision of the American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4 (2021) ("Rescue Plan" or "Act"). The Court should reject the Wisconsin Legislature's intervention motion for a number of reasons.

As a threshold matter, the Wisconsin Legislature incorrectly claims that it can represent the interests of the State of Wisconsin in this case. Under Wisconsin law, the Wisconsin Legislature can only represent the State in court to defend the validity of Wisconsin laws. This case is an affirmative challenge to a federal statute, so the proper party to represent the State of Wisconsin would be the Wisconsin department of justice, not the Legislature.

Furthermore, the Wisconsin Legislature lacks standing to raise the claims asserted in their proposed complaint. Like the Plaintiff States, the State of Wisconsin has not enacted *any* tax cut, nor has the Wisconsin

Legislature alleged that any hypothetical tax cut under consideration would decrease net tax revenue, nor has it alleged that it plans or intends to use Rescue Plan funds to offset that theoretical reduction. Because the Wisconsin Legislature has not alleged any intention to use federal funds in a way not permitted under the Act, it lacks standing to challenge the offset provision. But because the Wisconsin Legislature represents a legislative body and not a State, it uniquely lacks standing because it cannot establish an institutional injury. The Legislature remains free to pass legislation affecting tax policy in the State of Wisconsin, so there is no injury to the Legislature under the Rescue Plan.

Additionally, even if the Wisconsin Legislature had standing, it cannot meet the standards for intervention as of right. It has not identified a legal right that will necessarily be impaired by the outcome of this lawsuit, given its ability to file suit separately, in its home state. This Court should not allow the Wisconsin Legislature to nonetheless intervene as a permissive matter. While the Wisconsin Legislature may have identified a common issue of law, its attempt to join a suit by thirteen States already in progress—one of six[1]

---

[1] *See Ohio v. Yellen*, No. 1:21-cv-181 (S.D. Ohio); *Missouri v. Yellen*, 4:21-cv-376 (E.D. Mo.); *Arizona v. Yellen*, No. 2:21-cv-514 (D. Ariz.); *Kentucky v. Yellen*, No. 3:21-cv-17 (E.D. Ky.); *Texas v. Yellen*, No. 2:21-cv-79 (N.D. Tex.). The Court in *Missouri* dismissed the Complaint on May 12, 2021. *See Missouri v. Yellen*, No. 4:21-cv-376, 2021 WL 1889867, at *1 (E.D. Mo. May 11, 2021).

similar lawsuits already underway in different courts throughout the country—raises an appearance of forum shopping that should not be rewarded. The public interest is not served by focusing Spending Clause litigation nationwide in one district court. And denying intervention would not prevent the Wisconsin Legislature from suing in a more appropriate forum, or from presenting its own views as amicus in this matter.

In the alternative to denying intervention, the Court should defer resolution of the motion until it decides whether the Plaintiff States have standing. The Court could not permit the Wisconsin Legislature to intervene in a matter in which the Court lacks jurisdiction over the original Plaintiffs' claims.

## <u>BACKGROUND</u>

### A.   Statutory Background

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *See* Pub. L. No. 116-137, § 5001, 134 Stat. 281, 501 (2020) (codified at 42 U.S.C. § 801). The CARES Act established a $150 billion "Coronavirus Relief Fund" for States, tribal governments, and localities for 2020. *See* 42 U.S.C. § 801(a). That fund covers costs that are "necessary expenditures incurred due to the public health emergency" that "were not accounted for in the budget[s]" of those governments. *Id.* § 801(d). If recipients do not use the funds for the permitted purposes, the Act permits

the Treasury Department to recoup the amount of any misused funds. *Id.* § 801(e).

On March 11, 2021, Congress enacted the American Rescue Plan Act. *See* Pub. L. No. 117-2, § 9901(a) (codified at 42 U.S.C. §§ 802–805). The Rescue Plan establishes an additional "Coronavirus State Fiscal Recovery Fund," allocating another $220 billion to broadly "mitigate the fiscal effects" of the pandemic on States, territories, and Tribal governments through 2024. 42 U.S.C. § 802(a)(1); *see id.* § 803(a) (additional $130 billion for localities). Nearly $200 billion is allocated for the States and the District of Columbia. *Id.* § 802(b)(2)(A).

The Rescue Plan provides States with considerable latitude, in scope and duration, to use the funds for pandemic-related purposes. Through 2024, a State may use the funds "to cover costs incurred":

> (A) to respond to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19) or its negative economic impacts, including assistance to households, small businesses, and nonprofits, or aid to impacted industries such as tourism, travel, and hospitality;

> (B) to respond to workers performing essential work during the COVID–19 public health emergency by providing premium pay to eligible workers of the State, territory, or Tribal government that are performing such essential work, or by providing grants to eligible employers that have eligible workers who perform essential work;

(C) for the provision of government services to the extent of the reduction in revenue of such State, territory, or Tribal government due to the COVID–19 public health emergency relative to revenues collected in the most recent full fiscal year of the State, territory, or Tribal government prior to the emergency; or

(D) to make necessary investments in water, sewer, or broadband infrastructure.

*Id.* § 802(c)(1). While CARES Act funds were limited to covering previously unbudgeted costs of necessary expenditures incurred due to the public health emergency, the Rescue Plan allows States to use the funds for "government services" to the extent the pandemic has resulted in a "reduction in revenue." *Id.* § 802(c)(1)(C). The Rescue Plan also permits recipients to use the funds to respond broadly to the public-health emergency and its negative economic effects, to support essential workers during the pandemic, and to invest in certain infrastructure areas. *Id.* § 802(c)(1)(A), (B), (D).

The Rescue Plan includes two "further restrictions" to ensure that the broad outlay of funds is used for the identified purposes while funds are available. 42 U.S.C. § 802(c)(2). One limitation (not challenged here) provides that a State may not "deposit" Rescue Plan funds "into any pension fund." *Id.* § 802(c)(2)(B). The other limitation (at issue here) provides in relevant part that a State:

shall not use the funds provided under [§ 802] . . . to either directly or indirectly offset a reduction in the net tax revenue of such State or territory resulting from a change in law, regulation, or administrative interpretation during the covered period that

reduces any tax (by providing for a reduction in a rate, a rebate, a deduction, a credit, or otherwise) or delays the imposition of any tax or tax increase.

*Id.* § 802(c)(2)(A).[2]

By its terms, this funding condition applies only to reductions in "net" tax revenue. *Id.* This limitation on the use of federal funds is not implicated at all by a State's choice to modify its tax code—including by cutting taxes—if the changes, taken together, do not result in a reduction of *net* tax revenue. If a State chooses to reduce its net tax revenue, it may not use the Rescue Plan funds to "offset" that reduction. If a State chooses to do so, the State will be required to repay only the amount of funds used to offset the "reduction to net tax revenue" or "the amount of funds received," whichever is less. 42 U.S.C. § 802(e).

A State may receive federal funds after providing a certification (in a form provided by the agency) indicating that it needs the funds to carry out the activities specified in § 802(c) and that it will use the funds in compliance with that provision. *See* 42 U.S.C. § 802(d)(1). States that receive funds must then provide periodic reports and other information as the Secretary may require to administer the Act. *Id.* § 802(d)(2). The Rescue Plan further author-

---

[2] The "covered period" began on March 3, 2021 and "ends on the last day of the fiscal year of such State . . . in which all funds received by the State . . . have been expended or returned to, or recovered by, the Secretary." 42 U.S.C. § 802(g)(1).

izes the Secretary of the Treasury "to issue such regulations as may be necessary or appropriate to carry out this section." 42 U.S.C. § 802(f). The Treasury Department recently issued an Interim Final Rule ("IFR") implementing the relevant portions of the Rescue Plan. *See generally* Notice of IFR, ECF Nos. 55, 55-1.

### B.   Factual and Procedural Background

On March 31, 2021, thirteen States brought this suit alleging that the offset provision of § 802(c)(2)(A) is unconstitutional. Compl. ¶¶ 1–5, ECF No. 1. Plaintiffs nowhere alleged that they have enacted changes in state law during the covered period that would reduce net tax revenue, or that they intend to use Rescue Plan funds to offset any hypothetical reduction in net tax revenue. *See generally id.* ¶¶ 1–131. Plaintiffs nonetheless moved for a preliminary injunction ("PI") against "enforcement of" the offset provision. *See* PI Mot. at 30, ECF No. 21. Defendants filed their opposition to the PI motion on May 7, 2021. *See generally* Defs.' PI Opp'n, ECF No. 54.

On May 13, 2021, the Wisconsin Legislature moved to intervene as a Plaintiff and to join in the pending PI motion. *See* ECF Nos. 58, 58-2. Like the Plaintiff States, the Wisconsin Legislature points to no tax cuts in the State of Wisconsin or any plans to offset a reduction in net tax revenue with Rescue Plan funds. *See generally* Mot. to Intervene, ECF

No. 58. Wisconsin has already certified to the Department of the Treasury its intent to use Rescue Plan funds on permissible uses under 42 U.S.C. § 801(d)(1), and the Department of the Treasury has issued Wisconsin its first tranche payment of $1,266,58,313.25.

## LEGAL STANDARDS FOR INTERVENTION

"Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007). "The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement embodied in Article III of the Constitution." *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1300 (11th Cir. 2019). In the Eleventh Circuit, if there is an ongoing Article III case or controversy, intervenors "may in some cases be permitted to 'piggyback' upon the standing of original parties to satisfy the standing requirement." *Dillard*,  495 F.3d at 1330. This "piggyback" theory, of course, can apply only if the original Plaintiff has standing. *Id*. The Supreme Court has placed an additional strict limit on that "piggyback" theory: "*[A]t the least*, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017) (emphasis added); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("An intervenor of right

must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction.").[3]

Under Federal Rule of Civil Procedure 24(a)(2), a party may intervene as a matter of right if:

> (1) the application to intervene is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) the applicant's interest will not be represented adequately by the existing parties to the suit.

*Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007). The party's interest must be "direct, substantial and legally protectable." *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1249 (11th Cir. 2002). It must derive from a "legal right" and not be merely "an economic interest." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005).

Federal Rule of Civil Procedure 24(b) provides for permissive intervention when an applicant's claim or defense and the main action have a

---

[3] Although the Supreme Court has not addressed permissive intervention, the Court in *Laroe Estates* reasoned that the standing requirements are "deeply rooted" in our constitutional structure, and that it is always true that "[a]t least one plaintiff must have standing to seek each form of relief requested." *Town of Chester*, 137 S. Ct. at 1650-51. Those constitutional requirements apply regardless of the form of intervention sought.

question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b); *Georgia*, 302 F.3d at 1249–50. Ultimately, the decision whether a party should be allowed to permissively intervene is left to the district court's "full discretionary powers." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 712 (11th Cir. 1991); *see also Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (holding that permissive intervention is "wholly discretionary" and may be denied even if all standards are met).

## ARGUMENT

### I. THE WISCONSIN LEGISLATURE IS NOT AUTHORIZED TO REPRESENT THE STATE OF WISCONSIN IN THIS CASE.

In its motion, the Wisconsin Legislature asserts that it seeks "to protect the interests of the State of Wisconsin and its Legislature." Mot. to Intervene, at 1. But the Wisconsin Legislature cannot represent the interests of the State of Wisconsin in this context.

"[I]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). A party who lacks standing in their own right may represent the State only if State law authorizes that party "to speak for the State in federal court." *Id.* at 710; *see also Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019).

Wisconsin law provides:

> The [Wisconsin] department of justice shall . . . appear for and represent the state . . . and prosecute or defend in any court or before any officer, any cause or matter, civil or criminal in which the state or the people of this state may be interested. The joint committee on legislative organization may intervene as permitted under § 803.09(2m) at any time.

Wis. Stat. § 165.25(1m). Thus, the proper entity to represent the interests of the State of Wisconsin is the Wisconsin department of justice in all cases unless the exception under § 803.09(2m) applies. That section states:

> When a party to an action challenges in state or federal court the constitutionality of a statute, facially or as applied, challenges a statute as violating or preempted by federal law, or otherwise challenges the construction or validity of a statute, as part of a claim or affirmative defense, the assembly, the senate, and the legislature may intervene . . . .

*Id.* § 803.09(2m).

Under § 803.09(2m), the Wisconsin Legislature may intervene to represent the State's interests in court only in order to defend the validity of a state law. As the Wisconsin Supreme Court recently stated, "the statutory text [of § 803.09(2m)] unmistakably grants the Legislature an interest in defending *the validity of state law* when challenged in court." *Democratic Nat'l Comm. v. Bostelmann*, 949 N.W.2d 423, 426 (Wis. 2020) (emphasis added); *see also* Mot. to Intervene, at 3 (recognizing that the Legislature may intervene

"in a lawsuit in defense of state law"); *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 795 (7th Cir. 2019) ("The State of Wisconsin has chosen to have an attorney general as its representative, but it also has recently provided a mechanism by which its legislature . . . can intervene to defend the State's interest in the constitutionality of its statutes."). But that is not the case here. Here, the Wisconsin Legislature seeks to bring an affirmative challenge to a *federal* statute. There is no question about the validity of any Wisconsin statute at issue in this case, particularly as the Rescue Plan does not purport to invalidate any state law. Thus, the default rule under § 165.25(1m) applies, and the Wisconsin department of justice retains exclusive authority to represent the State.

## II.   THE WISCONSIN LEGISLATURE LACKS ARTICLE III STANDING TO BRING THIS ACTION.

The Wisconsin Legislature cannot establish Article III standing to seek relief with respect to the State of Wisconsin. Because the Wisconsin Legislature seeks a remedy not specifically sought by the Plaintiff States—a Court order that applies to the State of Wisconsin—the Wisconsin Legislature must establish its own standing. *See Little Sisters of the Poor*, 140 S. Ct. at 2379; *Town of Chester*, 137 S. Ct. at 1651. To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate "a concrete and particularized" injury in fact that is "actual or imminent." *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560–61 (1992) (citation omitted). When a plaintiff seeks to enjoin the future enforcement of a statute, "the injury-in-fact requirement" demands that the plaintiff "allege[] 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of [enforcement] thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)); *see id.* at 161–67 (analyzing the three elements separately). In other words, the prospect of enforcement must be "sufficiently imminent" to create a concrete injury. *Id.* at 159.

Even if the Wisconsin Legislature could represent State of Wisconsin, the State could not establish standing on this record for all of the same reasons as the other Plaintiff States. Defs.' PI Opp'n, at 9-15. The Motion to Intervene and the Proposed Complaint are silent as to how Wisconsin (the Legislature or any other part of the State government) intends to use Rescue Plan funds. *See generally* Mot. to Intervene; Proposed Complaint, ECF No. 58-1. Nowhere does the Wisconsin Legislature even suggest that the State plans to use Rescue Plan funds in a manner inconsistent with the offset provision or the IFR,[4] or even that the State has enacted *any* tax cuts. And unlike some of the Plaintiff States, *see* Compl. ¶¶ 76–83, the Wisconsin Legislature does

---

[4] The Wisconsin Legislature does not challenge or even mention the IFR in its Motion or Proposed Complaint, despite filing their motion after the Department of the Treasury issued the IFR.

not even point to tax changes that are under *consideration* in the State of Wisconsin. Under these circumstances, any injury to the State of Wisconsin from the offset provision is hypothetical and speculative. *See Missouri v. Yellen*, No. 4:21-cv-376, 2021 WL 1889867, at *4 (E.D. Mo. May 11, 2021) (dismissing a nearly identical case for lack of standing and ripeness).

Here, however, the Wisconsin Legislature cannot represent the interests of the State, so it has the further problem that it is limited to asserting an injury to itself as an institution. *Cf. Bethune-Hill*, 139 S. Ct. at 1953. The Wisconsin Legislature claims that "the Legislature's constitutional authority to enact legislation on tax matters is directly implicated by" the offset provision because the provision does not "properly advis[e] the Legislature what laws it can and cannot enact." Mot. to Intervene, at 8.[5] That alleged injury is insufficient to establish institutional standing.

The Supreme Court addressed standing of legislative bodies in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015). In that case, the Court held that the Arizona legislature had adequately alleged an "institutional injury" because a ballot initiative giving redistricting powers to an independent commission "would 'completely nullify' any vote by the Legislature, now or in the future, purporting to adopt a

---

[5] The Legislature also claims that the offset provision "harms the sovereign dignity of the State of Wisconsin and its Legislature," *id.* at 7, but the sovereign is the State, not its Legislature. In any event, the alleged injury to a State's "sovereign interests" should be rejected. *See* Defs.' PI Opp'n, at 11–12.

redistricting plan." *Id.* at 802-04 (quoting *Raines v. Byrd*, 521 U.S. 811, 823-24 (1997)). Echoing its earlier decision in *Raines*, the Court made clear that its decision was based on an alleged complete loss—not mere dilution—of legislative power. *See id.*; *see also Kerr v. Hickenlooper*, 824 F.3d 1207, 1215 (10th Cir. 2016).

Here, the offset provision has not stripped the Wisconsin Legislature of any power. The Rescue Plan does not prevent the Wisconsin Legislature from passing any tax law it wants; the Act simply prohibits the State from using Rescue Plan funds to offset a reduction in net tax revenue resulting from those changes. But even if the Rescue Plan did "implicate" tax legislation, the theoretical injury — recoupment of misused funds — would be to the State, and would occur *after* the Legislature passes legislation changing State tax laws that result in Rescue Plan funds being used to offset a reduction in net tax revenue. The Legislature is still free to pass such legislation, even with the (hypothetical) attendant consequences.[6] So the Wisconsin Legislature has at most alleged an "abstract dilution of institutional legislative power," rather than a cognizable institutional injury. *Raines*, 521 U.S. at 826. It therefore lacks standing.

_____

[6] Moreover, the only consequence to a State for misusing Rescue Plan funds is recoupment of the misused funds. But a recoupment action would be directed at a State's treasury, not its legislature. Thus, to the extent that recoupment is a cognizable injury for prospective relief at all, it is an injury to the State and not to its legislative body.

III.   THE WISCONSIN LEGISLATURE CANNOT INTERVENE AS OF RIGHT UNDER RULE 24(a).

In addition to being improper due to lack of standing, the Wisconsin Legislature's motion to intervene fails on the second and third prongs for intervention as of right.[7] With respect to the second prong—an interest relating to the property or transaction which is the subject of the action—the Wisconsin Legislature lacks the requisite interest in the outcome of this lawsuit because it has not described a cognizable injury, as discussed above. Its alleged injuries do not suffice to support intervention as of right because they are not based on any cognizable interest of the Legislature as an institution. *See Mt. Hawley Ins. Co.*, 425 F.3d at 1311; *S. Fla. Water Mgmt. Dist.*, 922 F.2d at 710-11 (intervenors injured by alleged actions lacked legal rights).[8]

With respect to the third prong—disposition of the action impeding or impairing the intervenor's ability to protect a cognizable interest—the outcome of this suit does not impair the Wisconsin Legislature's ability to protect any interest it may have because it is equally capable of challenging the

---

[7] As to the first prong—timeliness—the Wisconsin Legislature is correct that Defendants have not answered the Complaint. However, the Wisconsin Legislature filed its motion to intervene after the completion of the PI briefing, thereby denying Defendants the opportunity to address the specific problems with the Wisconsin Legislature's standing in their opposition to the PI motion.

[8] The Wisconsin Legislature cites *Huff v. Commissioner*, 743 F.3d 790, 799 (11th Cir. 2014), for the proposition that a sovereign has a legally protectable interest in the "integrity of its tax system" under this prong of Rule 24(a). Mot. to Intervene, at 7. As discussed above, the Wisconsin Legislature cannot represent the interests of the sovereign here under Wisconsin law.

offset provision in federal court in Wisconsin. *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 292 (11th Cir. 2020) ("[T]he ability to separately litigate defeats the impairment element."). Even assuming that the Wisconsin Legislature has an interest in challenging the offset provision as applied to Wisconsin, that interest would not be implicated by a decision in this case absent intervention. As the Wisconsin Legislature recognizes, the Court "may choose . . . to limit relief only to those States who are party to the litigation" should the Court rule that the offset provision is unconstitutional. Mot. to Intervene, at 10. Defendants have so argued, *see* Defs.' PI Opp'n, at 32-33, and the Plaintiff States do not purport to seek a nationwide injunction, *see* Compl. Prayer for Relief ¶ C. *See generally* PI Mot.[9] So if the Court denies intervention, the Wisconsin Legislature's rights will not be affected regardless of whether the Court grants the Plaintiff States' requested relief.

In circumstances where a proposed intervenor could bring a separate lawsuit in the *same* Circuit or district, some courts have held that the *stare*

---

[9] Assuming to the contrary that Plaintiff States seek a nationwide injunction in this lawsuit, the Wisconsin Legislature cannot satisfy the fourth prong required for intervention as of right. In this scenario, the Wisconsin Legislature would have the same interest as the Plaintiff States in seeking the same relief. The Court will "presume adequate representation when an existing party seeks the same objectives as the would-be interveners." *Clark v. Putnam County,* 168 F.3d 458, 461 (11th Cir. 1999); *Sierra Club, Inc. v. Leavitt,* 488 F.3d 904, 910 (11th Cir. 2007). This "weak" presumption "imposes upon the applicant for intervention "the burden of coming forward with some evidence to the contrary." *Id.* The Wisconsin Legislature has not explained how the thirteen Plaintiff States would not be able to advocate adequately for a position in favor of nationwide injunctive relief against an allegedly unconstitutional federal statute.

*decisis* effect of a decision may be sufficient to warrant intervention under this third element, particularly because judges in that district are likely to persuade one another. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989) (finding that detainees at a facility that was properly the subject of an action by the County could intervene in the County's lawsuit rather than bring a separate lawsuit); *Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (employees suing the same Florida employer on related theories could intervene in suit by other employee after class decertification). But the Eleventh Circuit has emphasized that intervention in such matters is motion-specific, and "the potential for negative stare decisis effects does not automatically grant plaintiffs the right to intervene." *Stone*, 371 F.3d at 1310; *see also Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 594 (11th Cir. 1991) (holding that a separate suit would actually assist the proposed intervenor in proving his claims); *Burke*, 833 F. App'x at 292. And in any event, the Wisconsin Legislature would bring suit in the Seventh Circuit, not in the Eleventh Circuit where this case is pending. So the Wisconsin Legislature cannot rely on this theory for intervention. Moreover, the Wisconsin Legislature may be in a different position from the Plaintiff States, both with regards to its status as a non-sovereign entity and to the particular tax laws

in the State of Wisconsin. Thus, the "potential for negative stare decisis effects" would be limited. *Stone*, 371 F.3d at 1310. The Court should therefore deny the motion to intervene as of right.

## IV.   THE COURT SHOULD DENY PERMISSIVE INTERVENTION.

The Court should deny permissive intervention as well. Even if the standards were met, permissive intervention remains wholly at the Court's discretion, and the Court should deny the motion.

First, the adequacy of a separate lawsuit is a sufficient reason to deny permissive intervention, *see Burke*, 833 F. App'x at 294, and the Wisconsin Legislature is free to file suit in its home state.

Second, the public interest would be better served if the Wisconsin Legislature were to pursue its claims, if any, in a different forum. There were originally six lawsuits in six different district courts addressing the same federal statute. One such lawsuit was been dismissed; in another lawsuit, the motion for a preliminary injunction was denied. The Wisconsin Legislature's effort to join *this* lawsuit, particularly after the developments in other related cases, raises at least the appearance of forum shopping. *Cf. In re W. Caribbean Airways Crew Members*, No. 07 22015 CIV, 2010 WL 11601239, at *10 (S.D. Fla. Jan. 8, 2010) (disfavoring intervention where intervenor was forum shopping). Nor can the Wisconsin Legislature claim that it would be somehow efficient to bundle its claims with those of the Plaintiff States. In the context

of considering nationwide injunctions, the Supreme Court has repeatedly emphasized the benefits of percolating important questions of law in multiple forums. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (highlighting that nationwide injunctions "have a detrimental effect by foreclosing adjudication by a number of different courts and judges"); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (explaining that universal injunctions "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch"); *Arizona v. Evans*, 514 U.S. 1, 23 n.1 (1995) (Ginsburg, J., dissenting) (recognizing "that when frontier legal problems are presented, periods of 'percolation' in, and diverse opinions from, state and federal appellate courts may yield a better informed and more enduring final pronouncement by this Court").

## V. IN THE ALTERNATIVE, THE COURT SHOULD HOLD THIS MOTION IN ABEYANCE UNTIL IT DECIDES WHETHER THE PLAINTIFF STATES HAVE STANDING.

The Wisconsin Legislature, like the Plaintiff States, seeks injunctive relief from implementation of the offset provision. As Defendants have argued, the Plaintiff States lack standing to bring similar claims. Defs.' PI

Opp'n at 9-15.[10] And in any event, Plaintiff States lack standing to seek relief beyond their own States. *See id.* at 32-33; *see also DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) (explaining that party lacks standing to "direct how the defendant[s] must act toward persons who are not parties to the case."); *Gill v. Whitford*, 138 S. Ct. 1916, 1931, 1933-34 (2018) ("[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury"). The Court should at least determine whether Plaintiff States have standing to bring this suit in the first place before deciding whether the Wisconsin Legislature may join it. The Court should therefore, as an alternative to denying the motion to intervene, hold this motion in abeyance.

## CONCLUSION

For the foregoing reasons, the Court should deny the Wisconsin Legislature's motion to intervene.

---

[10] Defendants relatedly argued that the Plaintiff States' claims are not ripe. *Id.* at 13-14.

DATED: May 28, 2021        Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/ Michael P. Clendenen*
MICHAEL P. CLENDENEN
STEPHEN EHRLICH
CHARLES E.T. ROBERTS
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-0693
Email: michael.p.clendenen@usdoj.gov

*Counsel for Defendants*