# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION

| | |
|---|---|
| **STATE OF WEST VIRGINIA**, by and through Patrick Morrisey, Attorney General of the State of West Virginia; **STATE OF ALABAMA**, by and through Steve Marshall, Attorney General of the State of Alabama; **STATE OF ARKANSAS**, by and through Leslie Rutledge, Attorney General of the State of Arkansas; **STATE OF ALASKA**, by and through Treg R. Taylor, Attorney General of the State of Alaska; **STATE OF FLORIDA**, by and through Ashley Moody, Attorney General of the State of Florida; **STATE OF IOWA**; **STATE OF KANSAS**, by and through Derek Schmidt, Attorney General of the State of Kansas; **STATE OF MONTANA**, by and through Austin Knudsen, Attorney General of the State of Montana; **STATE OF NEW HAMPSHIRE**; **STATE OF OKLAHOMA**, by and through Mike Hunter, Attorney General of the State of Oklahoma; **STATE OF SOUTH CAROLINA**, by and through Alan Wilson, Attorney General of the State of South Carolina; **STATE OF SOUTH DAKOTA**, by and through Jason R. Ravnsborg, Attorney General of the State of South Dakota; and **STATE OF UTAH**, by and through Sean Reyes, Attorney General of the State of Utah, <br><br>    Plaintiffs, <br>v. <br>**UNITED STATES DEPARTMENT OF THE TREASURY**; <br>**JANET YELLEN**, in her official capacity as the Secretary of the Department of the Treasury; and <br>**RICHARD K. DELMAR**, in his official capacity as acting inspector general of the Department of the Treasury, <br><br>    Defendants. | Case No. 7:21-cv-00465-LSC <br><br> **PROPOSED INTERVENOR-PLAINTIFF WISCONSIN LEGISLATURE'S REPLY MEMORANDUM IN SUPPORT OF ITS OPPOSED MOTION TO INTERVENE AS PLAINTIFF** |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1
ARGUMENT ..................................................................................................... 1
    I.   The Legislature Has Article III Standing ............................................. 1
    II.  The Legislature May Intervene As Of Right ....................................... 5
    III. Alternatively, This Court Should Grant Permissive Intervention ................ 8
    IV. This Court Should Decide The Legislature's Motion Now .......................... 9
CONCLUSION ................................................................................................ 10

## INTRODUCTION

The Wisconsin Legislature—which, under Wisconsin law, has the authority to speak for the State's sovereign interest in defending State law—has moved to intervene here for the same reason that all of the Plaintiff States' attorneys general filed this lawsuit: to defend the sovereign right to cut taxes without unconstitutional punishment. Thus, all considerations of sovereign comity and judicial efficiency militate strongly in favor of granting the Legislature's intervention motion, rather than forcing the Legislature to begin anew a duplicative action in another court.

## ARGUMENT

### I. The Legislature Has Article III Standing

The Legislature has shown "injury in fact" "caus[ed]" by Federal Tax Mandate for two independent reasons, which injuries this Court can "redress[]" by enjoining the Mandate as to Wisconsin. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted). First, the Mandate harms the State of Wisconsin's interest in the validity of its laws—which the Legislature has the authority to advance in court, *see* Wis. Stat. §§ 803.09(2m); 13.365(3); *Democratic Nat'l Comm. v. Bostelmann*, 949 N.W.2d 423, 424 (Wis. 2020)—by punishing Wisconsin for enacting tax laws under an impermissibly vague standard for when that punishment will occur. *See* Dkt. 58 at 6–7, 8–9. Second, and independently sufficient for Article

III standing, the Mandate undermines the Legislature's specific, institutional role under the Wisconsin Constitution to cut taxes. *See* Dkt. 58 at 8–9.

Defendants argue, Dkt. 67 at 10–12, that the Legislature lacks authority to advance the first of these interests—Wisconsin's interest in the validity of its laws—but they are wrong under binding Wisconsin law. The Wisconsin Supreme Court has unambiguously and definitively held that Section 803.09(2m) gives the "Legislature [ ] the authority to represent the State of Wisconsin's interest in the validity of state laws." *Democratic Nat'l Comm.*, 949 N.W.2d at 424. The Mandate, in turn, coercively punishes the State for enacting tax cuts for three years. *See* Dkt. 58 at 6–7. A Spending Clause-based penalty that is so coercive as to make the State's passage of a contrary law prohibitive is indistinguishable from a direct invalidation of state law, which is why such a mandate is unconstitutional in the first place. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576–77 (2012). And, at the pleading stage, this Court must "assume that on the merits the plaintiffs would be successful in their [coercion] claim[ ]." *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016) (citation omitted). Thus, the Legislature's intervention here is, in the Wisconsin Supreme Court's words interpreting Section 803.09(2m), "represent[ing] the State of Wisconsin's interest in the validity of state laws." *Democratic Nat'l Comm.*, 949 N.W.2d at 424.

Defendants also argue that any injury to the State of Wisconsin is "hypothetical and speculative," since the Legislature has not alleged how "Wisconsin . . . intends to use Rescue Plan funds." Dkt. 67 at 13–14. This argument misunderstands the Legislature's allegations of injury. The Mandate coercively limits the States' sovereign lawmaking power to reduce taxes and introduces grave uncertainty into the lawmaking process with its hopelessly vague terms. *Supra* pp. 1–2. The existence of those alleged injuries does not in any way depend upon how the Legislature "intends to use Rescue Plan funds." Dkt. 67 at 13. Rather, Wisconsin is experiencing these injuries *now*, making them "actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (citations omitted).

Defendants' reliance on *Missouri v. Yellen*, No. 4:21-cv-376, 2021 WL 1889867 (E.D. Mo. May 11, 2021), is misplaced. There, the district court did not conclude that plaintiff-Missouri's injury in fact was hypothetical or speculative—Defendants' argument here—but rather that Missouri lacked a constitutionally protected interest in receiving funds under the ARPA, since Congress "placed a condition on a State's receipt of the funds." *Id.* at *4. Notably, Defendants do not advance that Article III position here, and for good reason, since the *Yellen* court appears to have "confuse[d]" what it considered to be "weakness on the merits" of the State's claim "with [an] absence of Article III standing." *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) (brackets altered).

Defendants argue that the Legislature lacks standing because it has not "suggest[ed] that the State plans to use Rescue Plan funds in a manner inconsistent with the offset provision or the IFR" or "point[ed] to tax changes that are under consideration in the State of Wisconsin." Dkt. 67 at 13–14 (emphasis omitted). Defendants have simply ignored the Legislature's proposed Complaint, which explicitly alleges that "the Legislature has considered and is considering various tax relief bills for its citizens and businesses," but "*[t]he Mandate's prohibition would deprive the Legislature of its constitutional and sovereign authority to enact these various tax bills for the general welfare*." Dkt. 58-1, ¶ 37 (emphasis added). That is a straightforward allegation, which must be accepted as true at this stage. *See Jackson v. BellSouth Telecomm'ns*, 372 F.3d 1250, 1262 (11th Cir. 2004).

Finally, as to the Legislature's second, independent basis for Article III standing—its own special, institutional authority to cut taxes under the Wisconsin Constitution—Defendants' reliance on *Arizona State Legislature*, Dkt. 67 at 14–15, backfires. There, the Supreme Court concluded that the Arizona Legislature, "an institutional plaintiff asserting an institutional injury," could challenge the constitutionality of a state initiative because the initiative "would completely nullify any vote by the Legislature, now or in the future, purporting to adopt a redistricting plan." *Ariz. State Legislature*, 576 U.S. at 791–93, 799–804 (citations and brackets omitted). Here, the Wisconsin Legislature is also "an institutional plaintiff asserting

an institutional injury," *id.* at 803, alleging that the Mandate "*deprive[s]* the Legislature of its constitutional and sovereign authority to enact [ ] various tax bills for the general welfare," through unconstitutionally coercive conditions, Dkt. 58-1, ¶ 37 (emphasis added). Relatedly, *Arizona State Legislature* also refutes Defendants' thesis that any institutional harm would occur only "*after* the Legislature passes [tax] legislation," Dkt. 67 at 15, by holding that a legislature need not pass a "specific legislative act" that violates a legal provision in order to have standing, 576 U.S. at 801 (citations omitted). Finally, Defendants claim that "the only consequence" to Wisconsin from passing a tax-relief law barred by the Mandate would be a "recoupment action . . . directed at [Wisconsin's] treasury," which does not inflict an "injury" on the Legislature, Dkt. 67 at 15 n.6. Once again, Defendants are wrong; the Legislature has "the power of the purse" under the Wisconsin Constitution, so any harm to the State's treasury directly "implicate[s]" its interests, *Serv. Emps. Int'l Union, Loc. 1 v. Vos*, 946 N.W.2d 35, 56 (Wis. 2020).

## II. The Legislature May Intervene As Of Right

As the Legislature explained, it has satisfied the four required showings for intervention as of right. Dkt. 58 at 4–11; Fed. R. Civ. P. 24(a); *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). The Legislature's Motion is timely because the Legislature moved to intervene shortly after Plaintiff States filed their Complaint. Dkt. 58 at 5–6. The Legislature has an "interest . . .

that is the subject of the action," Fed. R. Civ. P. 24(a)(2), because the Mandate coercively conditions Wisconsin's receipt of federal funds on the State not enacting unspecific tax cuts. Dkt. 58 at 6–9. The Legislature will be "practically disadvantaged" if the Court "exclu[des]" it "from the proceedings," *Huff v. Comm'r*, 743 F.3d 790, 800 (11th Cir. 2014), because this is the first, largescale, multi-state challenge to the Mandate, and Wisconsin may lose out on the benefits of any injunction the Court enters here if the Legislature cannot intervene, Dkt. 58 at 9–10. And the Legislature has made the "minimal" showing needed to establish that the existing parties "may be" inadequate to represent its interests, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); Fed. R. Civ. P. 24(a)(2), as Defendants are diametrically opposed and Plaintiffs are separate sovereigns who are unable to represent Wisconsin's independent sovereign interests, Dkt. 58 at 10.

Defendants only dispute the Legislature's showing on "the second and third prongs for intervention as of right," Dkt. 67 at 16, thus waiving any argument on the first and fourth prongs.* The arguments that they do make are unpersuasive.

As to the second intervention-as-of-right element—the Legislature's interest in this action—Defendants reiterate their arguments with respect to the Legislature's

---

* Defendants' footnoted contention that the timing of the Legislature's motion prevented them from addressing the Legislature's standing in their "opposition to the PI Motion," ignores that they presented those same arguments fully in their Opposition here, Dkt. 67 at 12–15, 16 n.7.

standing, claiming that the Legislature has no "cognizable injury." Dkt. 67 at 16. As explained above, Defendants are incorrect on this score. *Supra* pp. 1–5.

Defendants' argument on the third prong—whether this Court's disposition of the action will impair the Legislature's interests—makes little sense in the context of the Legislature intervening as a plaintiff here. Defendants contend that because the Legislature can litigate its claims in the Seventh Circuit, this "defeats the impairment element." Dkt. 67 at 16–19 (citation omitted). But the Legislature is no different from any other State Plaintiff to this lawsuit, twelve of which did not file this lawsuit in district courts located in their States.

In any event, "the potential negative stare decisis effects" from a first lawsuit may create a "practical impairment" justifying intervention, and a district-court decision may create such a "practical impairment" and so "warrant intervention" because of its "significant persuasive effects," although another "district court would not be bound to follow" the decision. *Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004). Here, this Court's decision is likely to have "significant persuasive effects" on any challenge that the Legislature brought against the Mandate in a Wisconsin-based district court. *Id.* Defendants recognize the potential persuasive effects of district courts' decisions considering the Mandate, given that they cite one such decision in their opposition. *See* Dkt. 67 at 14 (citing *Missouri v. Yellen*, 2021 WL 1889867). Furthermore, Defendants' argument on this score says

nothing about the other "practical[ ] disadvantage[s]" that the Legislature would face from this Court excluding it from this case, *Huff*, 743 F.3d at 800; Dkt. 58 at 10, such as the waste of sovereign resources arising from separately litigating an identical action anew.

**III.    Alternatively, This Court Should Grant Permissive Intervention**

The Legislature also respectfully requests that this Court grant it permissive intervention under Rule 24(b). Dkt. 58 at 11–12. The Motion to Intervene is timely, Dkt. 58 at 11, and the Legislature's proposed Complaint raises the exact same claims as those of the Plaintiff States; thus, there are "common" questions of law or fact here, Fed. R. Civ. P. 24(b); Dkt. 58 at 11–12. The Legislature's intervention would not prejudice any party or unduly burden this Court, as the Legislature proposes to join in Plaintiff States' preliminary-injunction motion and has no desire to duplicate the parties' existing efforts to promptly resolve this case. Fed. R. Civ. P. 24(b).

Defendants do not dispute the timeliness of the Legislature's Motion, the Legislature's claim that common questions of law or fact exist here, or even the Legislature's argument that intervention would not prejudice Defendants or unduly burden this Court. Dkt. 67 at 19–20. Instead, Defendants reiterate their argument that the Legislature could bring a separate lawsuit against the Mandate. Dkt. 67 at 19. No better is Defendants' argument that a separate lawsuit would serve the "public interest" by encouraging "percolat[ion]" of the important questions here.

Dkt. 67 at 19–20.  As Defendants admit, six actions challenging the Mandate are already pending in federal courts across the country.  Dkt. 67 at 2–3 & n.1.

Defendants' claim that the Legislature's decision to move to intervene in this action "raises at least the appearance of forum shopping" is bizarre.  Dkt. 67 at 19.  As the Legislature explained, this action is the first, *by far* the largest (in terms of number of States) multi-state challenge to the Mandate, making it the most natural candidate for the Legislature to seek to join.  Dkt. 58 at 10; *supra* pp. 6.  There is nothing unusual about the Legislature seeking to join thirteen of its Sister States—eleven of which are also not within the Eleventh Circuit—in the lead lawsuit on this issue of state sovereignty, rather than duplicating litigation by filing in a new court, or joining a lawsuit that has only one other sister State as plaintiff.

## IV. This Court Should Decide The Legislature's Motion Now

Defendants' final argument is that this Court should hold the Legislature's Motion to Intervene in abeyance until this Court determines whether Plaintiff States have standing.  Dkt. 67 at 20–21.  Defendants have not offered a persuasive reason for this Court to hold the Legislature's Motion to Intervene in abeyance.  As already discussed, the Legislature has sought to assert the very same claims that Plaintiff States have asserted here.  *Supra* pp. 8.  Further, the Legislature has sought to join Plaintiff States' preliminary-injunction motion, including as to the arguments in support of that motion.  *Supra* pp. 8; *see generally* Dkt. 58-2.  This Court resolving

Plaintiffs' preliminary-injunction motion (including any question of standing), together with the Legislature's Motion to Intervene, would ensure that any relief against the Mandate that this Court issues to Plaintiff States would also extend to Wisconsin. That is the most appropriate course of action here.

## CONCLUSION

The Court should grant the Legislature's Motion To Intervene.

Respectfully submitted,

| | |
|---|---|
| /s/J. Houston Shaner | /s/Misha Tseytlin |
| J. HOUSTON SHANER | MISHA TSEYTLIN* |
| *Local Counsel* | *Counsel of Record* |
| TROUTMAN PEPPER | SEAN T.H. DUTTON* |
| HAMILTON SANDERS LLP | TROUTMAN PEPPER |
| 600 Peachtree Street, N.E. | HAMILTON SANDERS LLP |
| Suite 3000 | 227 West Monroe Street |
| Atlanta, GA 30308 | Suite 3900 |
| Telephone: (404) 885-3909 | Chicago, IL 60606 |
| Facsimile: (404) 885-3900 | Telephone: (608) 999-1240 |
| houston.shaner@troutman.com | Facsimile: (312) 759-1939 |
| | misha.tseytlin@troutman.com |
| | sean.dutton@troutman.com |
| | |
| | * Admitted *pro hac vice* |

*Counsel for Proposed Intervenor the Wisconsin Legislature*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2021, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: June 4, 2021

/s/Misha Tseytlin
MISHA TSEYTLIN