# U.S. District Court
# Northern District of Alabama (Western)
# CIVIL DOCKET FOR CASE #: <u>7:21−cv−00465−LSC</u>
# *Internal Use Only*

West Virginia, State of et al v. United States Department of the Treasury et al
Assigned to: Judge L Scott Coogler
Cause: 28:2201 Constitutionality of State Statute(s)

Date Filed: 03/31/2021
Date Terminated: 11/15/2021
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

| | | |
|---|---|---|
| **West Virginia, State of**<br>*byh and through Patrick Morrisey,*<br>*Attorney General of the State of West*<br>*Virginia* | represented by | **Lindsay Sara See**<br>OFFICE OF THE WEST VIRGINIA<br>ATTORNEY GENERAL<br>1900 Kanawha Blvd. East<br>Bldg 1 Rm 26E<br>Charleston, WV 25305−0220<br>304−558−2021<br>Fax: 304−558−0140<br>Email: <u>Lindsay.S.See@wvago.gov</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **David Christian Tryon**<br>OFFICE OF THE WEST VIRGINIA<br>ATTORNEY GENERAL<br>1900 Kanawha Blvd. East<br>Bldg 1 Rm 26E<br>Charleston, WV 25305−0220<br>304−558−2021<br>Fax: 304−558−0140<br>Email: <u>David.C.Tryon@wvago.gov</u><br>*ATTORNEY TO BE NOTICED* |
| | | **Jessica Anne Lee**<br>OFFICE OF THE WEST VIRGINIA<br>ATTORNEY GENERAL<br>1900 Kanawha Blvd. East<br>Bldg 1 Rm 26E<br>Charleston, WV 25305−0220<br>304−558−2021<br>Fax: 304−558−0140<br>Email: <u>Jessica.A.Lee@wvago.gov</u><br>*TERMINATED: 08/27/2021*<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

represented by

**Alabama, State of**
*by and through Steve Marshall, Attorney
General of the State of Alabama*

**Andrew Reid Harris**
OFFICE OF THE ATTORNEY
GENERAL
CONSTITUTIONAL DEFENSE
DIVISION
501 Washington Avenue
Montgomery, AL 36130
334–353–8891
Email: Reid.Harris@AlabamaAG.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryan McDaniel Taylor**
BACHUS BROM & TAYLOR LLC
3536 Independence Drive
Birmingham, AL 35209
334–595–9650
Fax: 205–970–7776
Email: btaylor@bachusbrom.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edmund Gerard LaCour , Jr.**
OFFICE OF THE ATTORNEY
GENERAL
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36104
334–242–7300
Fax: 334–242–4891
Email: Edmund.Lacour@AlabamaAG.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James W Davis**
OFFICE OF THE ATTORNEY
GENERAL
501 Washington Avenue
P O Box 300152
Montgomery, AL 36130–0152
334–242–7300
Fax: 334–353–8400
Email: jim.davis@alabamaag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Troy Marshall**
OFFICE OF THE ATTORNEY
GENERAL
501 Washington Avenue
Montgomery, AL 36104
334–242–7300

Fax: 334–242–4891
Email: smarshall@ago.state.al.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Arkansas, State of**
*by and through Leslie Rutledge, Attorney*
*General for the State of Arkansas*

represented by

**Nicholas Jacob Bronni**
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
501–682–6302
Fax: 501–682–8182
Email: nicholas.bronni@arkansasag.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
ARKANSAS ATTORNEY GENERAL'S
OFFICE
323 Center Street, Suite 200
Little Rock, AR 72201
501–682–3661
Fax: 501–682–8182
Email: dylan.jacobs@arkansasag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Vincent M Wagner**
ARKANSAS ATTORNEY GENERAL'S
OFFICE
323 Center Street, Suite 200
Little Rock, AR 72201
501–682–8090
Fax: 501–682–8182
Email: Vincent.Wagner@arkansasag.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alaska, State of**
*by and through Treg R. Taylor, Attorney*
*General of the State of Alaska*

represented by

**John Ptacin**
STATE OF ALASKA – ATTORNEY
GENERAL'S OFFICE
1031 W 4th Avenue, Suite 200
Anchorage, AK 99501
907–269–5232
Email: john.ptacin@alaska.gov
*TERMINATED: 01/12/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Hunter Gramling**

STATE OF ALASKA
OFFICE OF THE ATTORNEY
GENERAL
PO BOX 110300
Juneau, AK 99811–0300
907–465–6719
Fax: 907–465–2520
Email: mary.gramling@alaska.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Florida, State of**                        represented by   **Jason H. Hilborn**
*by and through Ashley Moodky, Attorney*                      Florida Office of the Attorney General
*General for the State of Florida*                            PL–01, The Capitol
                                                              Tallahassee, FL 32399
                                                              850–414–3830
                                                              Email: jason.hilborn@myfloridalegal.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Iowa, State of**                           represented by   **Jeffrey S Thompson**
                                                              IOWA ATTORNEY GENERAL'S
                                                              OFFICE
                                                              1305 E Walnut
                                                              Des Moines, IA 50319
                                                              515–281–4419
                                                              Email: jeffrey.thompson@ag.iowa.gov
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kansas, State of**                         represented by   **Dwight Carswell**
*by and through Derek Schmidt, Attorney*                      Office of the Kansas Attorney General
*General for the State of Kansas*                             120 SW 10th Ave, 2nd Floor
                                                              Topeka, KS 66612
                                                              785–368–8410
                                                              Email: dwight.carswell@ag.ks.gov
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Montana, State of**                        represented by   **David M.S. Dewhirst**
*by and through Austin Knudsen, Attorney*                     Montana Department of Justice, Office of
*General of the State of Montana*                             the Attorney Genera
                                                              215 North Sanders
                                                              PO Box 201401
                                                              Helena, MT 59620–1401
                                                              406–444–2026
                                                              Fax: 406–444–3549

Email: david.dewhirst@mt.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**New Hampshire, State of**                    represented by   **Anthony J Galdieri**
NH DEPARTMENT OF JUSTICE
33 Capitol Street
Concord, NH 03301
603−271−3650
Fax: 603−271−2110
Email: anthony.j.galdieri@doj.nh.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Oklahoma, State of**                         represented by   **Mithun Mansinghani**
*by and through Mike Hnter, Attorney*          OFFICE OF THE OKLAHOMA
*General of the State of Oklahoma*             ATTORNEY GENERAL
313 NE 21st Street
Oklahoma City, OK 73105
405−522−4392
Fax: 405−521−4518
Email: mithun.mansinghani@oag.ok.gov
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**South Carolina, State of**                   represented by   **James Emory Smith , Jr**
*by and through Alan Wilson, Attorney*         OFFICE OF THE ATTORNEY
*General of the Sate of South Carolina*        GENERAL
1000 Assembly St.
Columbia, SC 29201
803−734−3642
Fax: 803−734−3677
Email: esmith@scag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**South Dakota, State of**                     represented by   **Jeffery John Tronvold**
*by and through Jason R. Ravnsborg,*           OFFICE OF THE ATTORNEY
*Attorney General of the State of South*       GENERAL SOUTH DAKOTA
*Dakota*                                       1302 E. Highway 14, Suite 1
Pierre, SD 57501
605−773−3215
Fax: 605−773−4106
Email: Jeffery.tronvold@state.sd.us
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Utah, State of**                             represented by   **Melissa A Holyoak**
*by and through Sean Reyes, Attorney*          UTAH ATTORNEY GENERAL'S

*General of the State of Utah*

OFFICE
SOLICITOR GENERAL
160 East 300 South, 6th Floor
Salt Lake City, UT 84114
385–235–2719
Fax: 801–366–0221
Email: <u>melissaholyoak@agutah.gov</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Plaintiff**

**Wisconsin Legislature**                        represented by    **Misha Tseytlin**
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Montoe Street, Suite 3900
Chicago, IL 60606
312–759–5947
Fax: 312–759–1939
Email: <u>misha.tseytlin@troutman.com</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sean T H Dutton**
TROUTMAN PEPPER HAMILTON
SANDERS LLP
227 West Monroe Street, Suite, 3900
Chicago, IL 60606
312–759–1920
Fax: 312–759–1939
Email: <u>sean.dutton@troutman.com</u>
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Houston Shaner**
TROUTMAN SANDERS, LLP
600 Peachtree Street NE, Ste. 3000
Atlanta, GA 30308
404–885–3909
Fax: 404–885–3900
Email: <u>houston.shaner@troutman.com</u>
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

represented by

**United States Department of the Treasury**

Stephen Ehrlich
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
202–305–9803
Email: stephen.ehrlich@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles E T Roberts**
US DEPARTMENT OF JUSTICE
FEDERAL PROGRAMS BRANCH
1100 L Street NW
Washington, DC 20005
202–305–8628
Email: charles.e.roberts@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
UNITED STATES DEPARTMENT OF
JUSTICE
CIVIL DIVISON
1100 L Street NW
Washington, DC 20005
202–305–0693
Email: michael.p.clendenen@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Janet Yellen**
*in her official capacity as the Secretary
of the United States Department of the
Treasury*

represented by **Stephen Ehrlich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles E T Roberts**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Richard K Delmar**
*in his official capacity as acting
inspector general of the Department of
the Treasury*

represented by **Stephen Ehrlich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles E T Roberts**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Patrick Clendenen**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Chamber of Commerce of the United States**    represented by  **Kasdin Miller Mitchell**
KIRKLAND & ELLIS, LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
202–389–5165
Fax: 202–389–5200
Email: kasdin.mitchell@kirkland.com
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**The Buckeye Institute**    represented by  **Christopher W Weller**
CAPELL & HOWARD PC
150 South Perry Street
P O Box 2069
Montgomery, AL 36102–2069
334–241–8066
Fax: 334–323–8888
Email: chris.weller@chlaw.com
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**National Taxpayers Union Foundation**    represented by  **Joseph Henchman**
NATIONAL TAXPAYERS UNION
FOUNDATION
122 C Street NW, Suite 650
Washington, DC 20001
202–766–5019
Email: jbh@ntu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David I Schoen**
DAVID I. SCHOEN, ATTORNEY AT
LAW
2800 Zelda Road, Suite 100–6
Montgomery, AL 36106
334–395–6611
Fax: 917–591–7586
Email: DSchoen593@aol.com
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**The New Civil Liberties Alliance**    represented by  **Margaret A Little**
THE NEW CIVIL LIBERTIES

ALLIANCE
1225 19th St. N.W., Suite 450
Washington, DC 20036
202–869–5212
Fax: 202–869–5238
Email: peggy.little@ncla.legal
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Marc J Ayers**
BRADLEY ARANT BOULT
CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35283–0709
205–521–8000
Fax: 205–521–8800
Email: mayers@bradley.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Mike Crapo**                      represented by   **Michael L Jackson**
                                                     WALLACE JORDAN RATLIFF &
                                                     BRANDT, LLC
                                                     P O Box 530910
                                                     Birmingham, AL 35253
                                                     205–870–0555
                                                     Fax: 205–874–3251
                                                     Email: mjackson@wallacejordan.com
                                                     *ATTORNEY TO BE NOTICED*

**Amicus**

**Tim Scott**                       represented by   **Michael L Jackson**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**Amicus**

**John Barrasso**                   represented by   **Michael L Jackson**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**Amicus**

**Marsha Blackburn**                represented by   **Michael L Jackson**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**Amicus**

**John Boozman**                    represented by   **Michael L Jackson**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

**Amicus**

Mike Braun        represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

Shelley Moore Capito       represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

John Cornyn       represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

Kevin Cramer       represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

Ted Cruz       represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

Steve Daines       represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

Bill Hagerty       represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

James Inhofe       represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

James Lankford       represented by   **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*


**Amicus**

Roger Marshall       represented by

Michael L Jackson
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Rob Portman**                          represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**James E. Risch**                       represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Ben Sasse**                            represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Rick Scott**                           represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Todd Young**                           represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Jim Banks**                            represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Kevin Brady**                          represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Robert Aderholt**                      represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Rick W. Allen**                        represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Andy Biggs**                                represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Gus M. Bilirakis**                          represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Dan Bishop**                                represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Lauren Boebert**                            represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Mo Brooks**                                 represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Vern Buchanan**                             represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Ted Budd**                                  represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Earl L. Carter**                            represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**Ben Cline**                                 represented by   **Michael L Jackson**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Amicus**

**James Comer**                               represented by

Michael L Jackson
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Warren Davidson**                    represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Jeff Duncan**                        represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Ron Estes**                          represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**A. Drew Ferguson, IV**               represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Scott Fitzgerald**                   represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Mike Garcia**                        represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Louie Gohmert**                      represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Bob Good**                           represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Lance Gooden**                       represented by     **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**D.D.S. Paul A. Gosar**                   represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Glenn Grothman**                         represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Michael Guest**                          represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Diana Harshbarger**                      represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Vicky Hartzler**                         represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Kevin Hern**                             represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Yvette Herrell**                         represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Ashley Hinson**                          represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Ronny L. Jackson**                       represented by   **Michael L Jackson**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*


**Amicus**

**Mike Kelly**                             represented by

Michael L Jackson
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Darin LaHood**                                represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Kevin McCarthy**                              represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Tom McClintock**                              represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Carol D. Miller**                             represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Barry Moore**                                 represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Devin Nunes**                                 represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Scott Perry**                                 represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Tom Reed**                                    represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Guy Reschenthaler**                           represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Tom Rice**                                          represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**Mike Rogers**                                       represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**David Rouzer**                                      represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**David Schweikert**                                  represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**Pete Sessions**                                     represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**Adrian Smith**                                      represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**Jason Smith**                                       represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**Lloyd Smucker**                                     represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**Michelle Steel**                                    represented by   **Michael L Jackson**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**W. Gregory Steube**                                 represented by

**Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

Amicus

**Claudia Tenney**                    represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

Amicus

**Ann Wagner**                        represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

Amicus

**Jackie Walorski**                   represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

Amicus

**Michael Waltz**                     represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

Amicus

**Randy Weber**                       represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

Amicus

**Brad Wenstrup**                     represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

Amicus

**American Center for Law and Justice**    represented by    **Michael L Jackson**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/31/2021 | 1 | | COMPLAINT against Richard K Delmar, United States Department of the Treasury, Janet Yellen, filed by Kansas, State of, Arkansas, State of, Utah, State of, Alabama, State of, West Virginia, State of, South Dakota, State of, New Hampshire, State of, Florida, State of, Montana, State of, Oklahoma, State of, South Carolina, State of, Alaska, State of, Iowa, State of. Filing fee paid $402.00 rec #B4601112390(KAM) (Entered: 03/31/2021) |

| 04/02/2021 | 2 | | AFFIDAVIT of Service for Complaint and Summons served on All Defendants on 4/1/2021, filed by Alabama, State of. (Attachments: # 1 Exhibit A – USA Summons)(Harris, Andrew) (Entered: 04/02/2021) |
|---|---|---|---|
| 04/02/2021 | 3 | | Summons Issued as to Richard K Delmar, United States Department of the Treasury, Janet Yellen, U.S. Attorney and U.S. Attorney General. Returned to Plaintiff for service. (MEB2) (Entered: 04/02/2021) |
| 04/06/2021 | 4 | | MOTION for Leave to Appear Pro Hac Vice *Application to Appear Pro Hac Vice on Behalf of Plaintiff State of Alaska* by Alaska, State of. (Attachments: # 1 Declaration of Bryan Taylor)(Ptacin, John) (Entered: 04/06/2021) |
| 04/07/2021 | 5 | | MOTION for Leave to Appear Pro Hac Vice by South Carolina, State of. (Attachments: # 1 Exhibit Declaration of Taylor)(Smith, James) (Entered: 04/07/2021) |
| 04/07/2021 | 6 | | MOTION for Leave to Appear Pro Hac Vice by West Virginia, State of. (Attachments: # 1 Declaration)(See, Lindsay) (Entered: 04/07/2021) |
| 04/07/2021 | 7 | | MOTION for Leave to Appear Pro Hac Vice by West Virginia, State of. (Attachments: # 1 Declaration)(Lee, Jessica) (Entered: 04/07/2021) |
| 04/07/2021 | 8 | | MOTION for Leave to Appear Pro Hac Vice by West Virginia, State of. (Attachments: # 1 Declaration)(Tryon, David) (Entered: 04/07/2021) |
| 04/07/2021 | 9 | | MOTION for Leave to Appear Pro Hac Vice by Kansas, State of. (Attachments: # 1 Affidavit Declaration of Bryan Taylor)(Carswell, Dwight) (Entered: 04/07/2021) |
| 04/07/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3813973. (Carswell, Dwight) NDAL rec# B4601112523 (Entered: 04/07/2021) |
| 04/07/2021 | 10 | | MOTION for Leave to Appear Pro Hac Vice by Arkansas, State of. (Attachments: # 1 Exhibit Declaration)(Bronni, Nicholas) (Entered: 04/07/2021) |
| 04/07/2021 | 11 | | MOTION for Leave to Appear Pro Hac Vice by Arkansas, State of. (Attachments: # 1 Exhibit Declaration)(Wagner, Vincent) (Entered: 04/07/2021) |
| 04/07/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3814277. (Wagner, Vincent) NDAL rec# B461112533 Modified on 4/8/2021 (KAM). (Entered: 04/07/2021) |
| 04/07/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3814280. (Bronni, Nicholas) NDAL rec# B4601112534 Modified on 4/8/2021 (KAM). (Entered: 04/07/2021) |
| 04/08/2021 | 12 | | MOTION for Leave to Appear Pro Hac Vice by Arkansas, State of. (Attachments: # 1 Declaration)(Jacobs, Dylan) (Entered: 04/08/2021) |
| 04/08/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3814533. (Jacobs, Dylan) NDAL rec# B4601112541 Modified on 4/8/2021 (KAM). (Entered: 04/08/2021) |
| 04/08/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3814574. (Lee, Jessica) NDAL rec#B4601112547. (Entered: 04/08/2021) |
| 04/08/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3814592. (See, Lindsay) NDAL rec# B4601112545. (Entered: 04/08/2021) |

| 04/08/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3814595. (Tryon, David) NDAL rec #B460112546. (Entered: 04/08/2021) |
|---|---|---|---|
| 04/08/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3814629. (Smith, James) NDAL rec # B461112544 (Entered: 04/08/2021) |
| 04/08/2021 | 13 | | TEXT ORDER: The 5 , 6 , 7 , 8 , 9 , 10 , 11 , 12 Motions for Leave to Appear Pro Hac Vice are GRANTED. The motions include the information required under the Local Rules and the docket sheet reflects payment of the applicable fees. Signed by Magistrate Judge Gray M. Borden on 04/08/2021. (SUH) (Entered: 04/08/2021) |
| 04/08/2021 | 14 | | TEXT ORDER: Before the court is the 4 motion to allow John Michael Ptacin to appear pro hac vice on behalf of Plaintiff the State of Alaska. The motion, which includes the information required under the Local Rules, is CONDITIONALLY GRANTED, subject to the payment of the applicable fee within seven calendar days. Upon receipt of the required fee, this conditional grant of pro hac vice status will become final without further court action. Signed by Magistrate Judge Gray M. Borden on 04/08/2021. (SUH) (Entered: 04/08/2021) |
| 04/08/2021 | 15 | | MOTION for Leave to Appear Pro Hac Vice on behalf of Plaintiff State of South Dakota by South Dakota, State of. (Tronvold, Jeffery) (Entered: 04/08/2021) |
| 04/08/2021 | 16 | | TEXT ORDER: Before the court is the 15 motion to allow Jeffery J. Tronvold to appear pro hac vice on behalf of Plaintiff the State of South Dakota. The motion, which includes the information required under the Local Rules, is CONDITIONALLY GRANTED, subject to the payment of the applicable fee within seven calendar days. Upon receipt of the required fee, this conditional grant of pro hac vice status will become final without further court action. Signed by Magistrate Judge Gray M. Borden on 04/08/2021. (SUH) (Entered: 04/08/2021) |
| 04/09/2021 | 17 | | MOTION for Leave to Appear Pro Hac Vice by Florida, State of. (Attachments: # 1 Declaration)(Hilborn, Jason) (Entered: 04/09/2021) |
| 04/12/2021 | 18 | | TEXT ORDER: Before the court is the 17 motion to allow Jason Harrison Hilborn to appear pro hac vice on behalf of Plaintiff the State of Florida. The motion, which includes the information required under the Local Rules, is CONDITIONALLY GRANTED, subject to the payment of the applicable fee within seven calendar days. Upon receipt of the required fee, this conditional grant of pro hac vice status will become final without further court action. Signed by Magistrate Judge Gray M. Borden on 04/12/2021. (SUH) (Entered: 04/12/2021) |
| 04/12/2021 | 19 | | MOTION for Leave to Appear Pro Hac Vice *on Behalf of Plaintiff State of Utah* by Utah, State of. (Attachments: # 1 Exhibit 1−Declaration of Bryan M. Taylor, # 2 Exhibit 2−Certificate of Good Standing−US District Court for the District of Utah)(Holyoak, Melissa) (Entered: 04/12/2021) |
| 04/12/2021 | 20 | | TEXT ORDER: Before the court is the 19 motion to allow Melissa A. Holyoak to appear pro hac vice on behalf of Plaintiff the State of Utah. The motion, which includes the information required under the Local Rules, is CONDITIONALLY GRANTED, subject to the payment of the applicable fee |

| | | |
|---|---|---|
| | | within seven calendar days. Upon receipt of the required fee, this conditional grant of pro hac vice status will become final without further court action. Signed by Magistrate Judge Gray M. Borden on 04/12/2021. (SUH) (Entered: 04/12/2021) |
| 04/12/2021 | | PHV Fee paid: $ 75, receipt number 1126–3816384. (Holyoak, Melissa) NDAL rec# B4601112626. (Entered: 04/12/2021) |
| 04/12/2021 | | PHV Fee paid: $ 75, receipt number 1126–3816401. (Hilborn, Jason) NDAL rec# B4601112627. (Entered: 04/12/2021) |
| 04/13/2021 | 21 | MOTION for Preliminary Injunction *and Memorandum in Support of the Motion* by Alabama, State of. (Attachments: # 1 Exhibit)(LaCour, Edmund) (Entered: 04/13/2021) |
| 04/14/2021 | 22 | ORDER directing the Clerk of Court to reassign this case to a district jujdge randomly drawn. Signed by Magistrate Judge Gray M Borden on 4/14/2021. (KAM) (Entered: 04/14/2021) |
| 04/14/2021 | | PHV Fee paid: $ 75, receipt number 1126–3818835(NDAL rec# B4601112721). (Ptacin, John) Modified on 4/15/2021 (MEB2). (Entered: 04/14/2021) |
| 04/14/2021 | 23 | NOTICE OF REASSIGNMENT: This action has been reassigned to Judge L Scott Coogler. Magistrate Judge Gray M Borden no longer assigned to the case. (KAM) (Entered: 04/14/2021) |
| 04/15/2021 | 24 | MOTION for Leave to Appear Pro Hac Vice by Montana, State of. (Attachments: # 1 Declaration)(Dewhirst, David) (Entered: 04/15/2021) |
| 04/15/2021 | | PHV Fee paid: $ 75, receipt number 1126–3819402 (B4601112723). (Dewhirst, David) Modified on 4/15/2021 (MEB2). (Entered: 04/15/2021) |
| 04/15/2021 | 25 | MOTION for Limited Admission *to appear Pro Hac Vice* by Oklahoma, State of. (Attachments: # 1 Declaration of Local Counsel)(Mansinghani, Mithun) (Entered: 04/15/2021) |
| 04/15/2021 | | PHV Fee paid: $ 75, receipt number 1126–3819727 (B4601112739). (Mansinghani, Mithun) Modified on 4/15/2021 (MEB2). (Entered: 04/15/2021) |
| 04/19/2021 | 26 | TEXT ORDER: David M.S. Dewhirst and Mithun Suresh Mansinghani have moved for leave to appear pro hac vice 24 25 . Their motions are GRANTED. Signed by Judge L Scott Coogler on 4/19/2021. (PSM) (Entered: 04/19/2021) |
| 04/21/2021 | 27 | NOTICE of Appearance by Stephen Ehrlich on behalf of All Defendants (Ehrlich, Stephen) (Entered: 04/21/2021) |
| 04/21/2021 | | PHV Fee paid: $75, receipt number B4601112723 as to Jeffery John Tronvold (PSM) (Entered: 04/21/2021) |
| 04/21/2021 | 28 | Joint MOTION to Set Briefing Schedule by Richard K Delmar, United States Department of the Treasury, Janet Yellen. (Ehrlich, Stephen) (Entered: 04/21/2021) |
| 04/22/2021 | 29 | NOTICE of Appearance by Charles E T Roberts on behalf of All Defendants (Roberts, Charles) (Entered: 04/22/2021) |

| 04/23/2021 | | | NOTICE of Hearing: **Telephone Conference set for 4/30/2021 at 9:30 AM** before Judge L Scott Coogler. Counsel are to call 877−336−1828 and use Access Code 3967498 five (5) minutes prior to the start of the conference. (PSM) (Entered: 04/23/2021) |
|---|---|---|---|
| 04/23/2021 | 30 | | TEXT ORDER: The Joint Motion to Set a Briefing Schedule 28 is GRANTED. All amicus briefs in support of the plaintiffs Motion for Preliminary Injunction are due by 04/30/2021. The defendants' response to the plaintiffs Motion for Preliminary Injunction is due by 05/07/2021. All amicus briefs in support of the defendants' response are due by 05/07/21. The plaintiffs' reply brief is due by 05/14/2021. All submissions must be in 14−point type, except footnotes may be in 12−point type. Signed by Judge L Scott Coogler on 4/23/2021. (PSM) (Entered: 04/23/2021) |
| 04/23/2021 | 31 | | MOTION for Leave to Appear Pro Hac Vice *for Paul D. Clement* by Chamber of Commerce of the United States. (Attachments: # 1 Declaration, # 2 Additional Courts)(Mitchell, Kasdin) (Entered: 04/23/2021) |
| 04/23/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3825022 (ALND receipt #B4601112851). (Mitchell, Kasdin) Modified on 4/23/2021 (MEB2). (Entered: 04/23/2021) |
| 04/23/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3825676 (ALND receipt #B4601112877). (Thompson, Jeffrey) Modified on 4/26/2021 (MEB2). (Entered: 04/23/2021) |
| 04/23/2021 | 32 | | MOTION for Leave to Appear Pro Hac Vice by Iowa, State of. (Attachments: # 1 Supplement Declaration of Bryan Taylor)(Thompson, Jeffrey) (Entered: 04/23/2021) |
| 04/27/2021 | 33 | | ORDER The Court entered a briefing schedule on 04/23/21. 30 This Order supplements those directives. First, the defendants' response to the plaintiffs' Motion for Preliminary Injunction shall not exceed forty−three (43) double−spaced pages. Second, no amicus brief shall exceed thirty (30) double−paced pages. The Court encourages amici to work together to file joint briefs. Third, and as explained in the previously entered briefing schedule, all submissions must be in 14−point type, except footnotes may be in 12−point ype. Signed by Judge L Scott Coogler on 4/27/2021. (PSM) (Entered: 04/27/2021) |
| 04/27/2021 | 34 | | NOTICE of Appearance by Michael Patrick Clendenen on behalf of Richard K Delmar, United States Department of the Treasury, Janet Yellen (Clendenen, Michael) (Entered: 04/27/2021) |
| 04/27/2021 | 35 | | MOTION for Leave to Appear Pro Hac Vice *of Andrew M. Grossman* by The Buckeye Institute. (Attachments: # 1 Exhibit 1 – List of Admissions, # 2 Affidavit Declaration of Christopher W. Weller)(Weller, Christopher) (Entered: 04/27/2021) |
| 04/27/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3827659 (NDAL receipt #B4601112943). (Weller, Christopher) Modified on 4/27/2021 (MEB2). (Entered: 04/27/2021) |
| 04/27/2021 | 36 | | TEXT ORDER: Paul D. Clement, Jeffrey Scott Thompson, and Andrew M. Grossman have moved for leave to appear pro hac vice 31 32 35 . Their motions |

| | | | |
|---|---|---|---|
| | | | are GRANTED. Signed by Judge L Scott Coogler on 4/27/2021. (PSM) (Entered: 04/27/2021) |
| 04/27/2021 | 37 | | MOTION for Leave to Appear Pro Hac Vice on Behalf of Proposed Amicus National Taxpayers Union Foundation by National Taxpayers Union Foundation. (Henchman, Joseph) (Entered: 04/27/2021) |
| 04/27/2021 | 38 | | NOTICE of Appearance by David I Schoen on behalf of National Taxpayers Union Foundation (Schoen, David) (Entered: 04/27/2021) |
| 04/28/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3827987 (NDAL receipt #B4601112953). (Henchman, Joseph) Modified on 4/28/2021 (MEB2). (Entered: 04/28/2021) |
| 04/28/2021 | 39 | | NOTICE of Appearance by Christopher W Weller on behalf of The Buckeye Institute (Weller, Christopher) (Entered: 04/28/2021) |
| 04/29/2021 | 40 | | MOTION for Leave to Appear Pro Hac Vice *of Margaret A. Little* by The New Civil Liberties Alliance. (Attachments: # 1 Exhibit 1 – List of Admissions, # 2 Affidavit Declaration of Marc James Ayers)(Ayers, Marc) (Entered: 04/29/2021) |
| 04/30/2021 | | | TEXT ORDER: Joseph D. Henchman has moved for leave to appear pro hac vice 37 . His motion is GRANTED. Signed by Judge L Scott Coogler on 4/30/2021. (PSM) (Entered: 04/30/2021) |
| 04/30/2021 | | | Minute Entry for proceedings held before Judge L Scott Coogler: Telephone Conference held on 4/30/2021. (PSM) (Entered: 04/30/2021) |
| 04/30/2021 | 41 | | MOTION for Leave to File *Amicus Curiae Brief in Support of Plaintiff States* by The Buckeye Institute. (Attachments: # 1 Brief of Amicus Curiae The Buckeye Institute)(Weller, Christopher) (Additional attachment(s) added on 4/30/2021: # 1 Exhibit 1) (PSM, ). (Entered: 04/30/2021) |
| 04/30/2021 | 42 | | Brief re 21 MOTION for Preliminary Injunction *and Memorandum in Support of the Motion Amici Curiae Brief of Seventy−Eight (78) Members of the U.S. Senate and U.S. House of Representatives and the American Center for Law and Justice in Support of Plaintiffs' Motion for Preliminary Injunction* filed by Mike Crapo, Tim Scott, John Barrasso, Marsha Blackburn, John Boozman, Mike Braun, Shelley Moore Capito, John Cornyn, Kevin Cramer, Ted Cruz, Steve Daines, Bill Hagerty, James Inhofe, James Lankford, Roger Marshall, Rob Portman, James E. Risch, Ben Sasse, Rick Scott, Todd Young, Jim Banks, Kevin Brady, Robert Aderholt, Rick W. Allen, Andy Biggs, Gus M. Bilirakis, Dan Bishop, Lauren Boebert, Mo Brooks, Vern Buchanan, Ted Budd, Earl L. Carter, Ben Cline, James Comer, Warren Davidson, Jeff Duncan, Ron Estes, A. Drew Ferguson, IV, Scott Fitzgerald, Mike Garcia, Louie Gohmert, Bob Good, Lance Gooden, Paul A. Gosar, Glenn Grothman, Michael Guest, Diana Harshbarger, Vicky Hartzler, Kevin Hern, Yvette Herrell, Ashley Hinson, Ronny L. Jackson, Mike Kelly, Darin LaHood, Kevin McCarthy, Tom McClintock, Carol D. Miller, Barry Moore, Devin Nunes, Scott Perry, Tom Reed, Guy Reschenthaler, Tom Rice, Mike Rogers, David Rouzer, David Schweikert, Pete Sessions, Adrian Smith, Jason Smith, Lloyd Smucker, Michelle Steel, W. Gregory Steube, Claudia Tenney, Ann Wagner, Jackie Walorski, Michael Waltz, Randy Weber, Brad Wenstrup, American Center for Law and Justice. (Jackson, Michael) (Entered: 04/30/2021) |

| | | | |
|---|---|---|---|
| 04/30/2021 | 43 | | Unopposed MOTION for Leave to File *Amicus Curiae Brief* by National Taxpayers Union Foundation. (Attachments: # 1 Brief of Amicus Curiae National Taxpayers Union Foundation in Support of Plaintiffs' Motion for Preliminary Injunction)(Henchman, Joseph) (Entered: 04/30/2021) |
| 04/30/2021 | | | PHV Fee paid: $ 75, receipt number 1126–3830593. (Ayers, Marc) (Entered: 04/30/2021) |
| 04/30/2021 | 44 | | Unopposed MOTION for Leave to File *Amicus Curiae Brief* by Chamber of Commerce of the United States. (Attachments: # 1 Exhibit Amicus Curiae Brief)(Mitchell, Kasdin) (Entered: 04/30/2021) |
| 04/30/2021 | 45 | | NOTICE of Appearance by Kasdin Miller Mitchell on behalf of Chamber of Commerce of the United States (Mitchell, Kasdin) (Entered: 04/30/2021) |
| 04/30/2021 | 46 | | NOTICE of Appearance by Joseph Henchman on behalf of National Taxpayers Union Foundation (Henchman, Joseph) (Entered: 04/30/2021) |
| 04/30/2021 | 47 | | NOTICE of Appearance by Marc J Ayers on behalf of The New Civil Liberties Alliance (Ayers, Marc) (Entered: 04/30/2021) |
| 04/30/2021 | 48 | | MOTION for Leave to File *Amicus Curiae Brief in Support of Plaintiff States* by The New Civil Liberties Alliance. (Attachments: # 1 Exhibit Brief for Amicus Curiae)(Ayers, Marc) (Entered: 04/30/2021) |
| 05/03/2021 | 49 | | NOTICE by Richard K Delmar, United States Department of the Treasury, Janet Yellen *(Joint)* (Clendenen, Michael) (Entered: 05/03/2021) |
| 05/04/2021 | 50 | | NOTICE of Appearance by Michael L Jackson on behalf of Robert Aderholt, Rick W. Allen, American Center for Law and Justice, Jim Banks, John Barrasso, Andy Biggs, Gus M. Bilirakis, Dan Bishop, Marsha Blackburn, Lauren Boebert, John Boozman, Kevin Brady, Mike Braun, Mo Brooks, Vern Buchanan, Ted Budd, Shelley Moore Capito, Earl L. Carter, Ben Cline, James Comer, John Cornyn, Kevin Cramer, Mike Crapo, Ted Cruz, Steve Daines, Warren Davidson, Jeff Duncan, Ron Estes, A. Drew Ferguson, IV, Scott Fitzgerald, Mike Garcia, Louie Gohmert, Bob Good, Lance Gooden, Paul A. Gosar, Glenn Grothman, Michael Guest, Bill Hagerty, Diana Harshbarger, Vicky Hartzler, Kevin Hern, Yvette Herrell, Ashley Hinson, James Inhofe, Ronny L. Jackson, Mike Kelly, Darin LaHood, James Lankford, Roger Marshall, Kevin McCarthy, Tom McClintock, Carol D. Miller, Barry Moore, Devin Nunes, Scott Perry, Rob Portman, Tom Reed, Guy Reschenthaler, Tom Rice, James E. Risch, Mike Rogers, David Rouzer, Ben Sasse, David Schweikert, Rick Scott, Tim Scott, Pete Sessions, Adrian Smith, Jason Smith, Lloyd Smucker, Michelle Steel, W. Gregory Steube, Claudia Tenney, Ann Wagner, Jackie Walorski, Michael Waltz, Randy Weber, Brad Wenstrup, Todd Young (Jackson, Michael) (Entered: 05/04/2021) |
| 05/07/2021 | 51 | | TEXT ORDER: Margaret A. Little moved for leave to appear pro hac vice 40 . Her motion is GRANTED. Signed by Judge L. Scott Coogler. Signed by Judge L Scott Coogler on 5/7/2021. (KEK) (Entered: 05/07/2021) |
| 05/07/2021 | 52 | | TEXT ORDER: The pending Motions for Leave to File Amicus Curiae Briefs 41 43 44 48 are GRANTED. Signed by Judge L. Scott Coogler. Signed by Judge L Scott Coogler on 5/7/2021. (KEK) (Entered: 05/07/2021) |
| 05/07/2021 | | | |

| | | | |
|---|---|---|---|
| | | | PHV Fee paid: $ 75, receipt number 1126–3835327 (ALND receipt #B4601113209). (Galdieri, Anthony) Modified on 5/7/2021 (MEB2). (Entered: 05/07/2021) |
| 05/07/2021 | 53 | | MOTION *in Application to Appear Pro Hac Vice* by New Hampshire, State of. (Attachments: # 1 Supplement Declaration in Support of PHV Request)(Galdieri, Anthony) (Entered: 05/07/2021) |
| 05/07/2021 | 54 | | RESPONSE in Opposition re 21 MOTION for Preliminary Injunction *and Memorandum in Support of the Motion* filed by Richard K Delmar, United States Department of the Treasury, Janet Yellen. (Ehrlich, Stephen) (Entered: 05/07/2021) |
| 05/11/2021 | 55 | | NOTICE by Richard K Delmar, United States Department of the Treasury, Janet Yellen *of Interim Final Rule* (Attachments: # 1 Exhibit Interim Final Rule)(Roberts, Charles) (Entered: 05/11/2021) |
| 05/12/2021 | 56 | | NOTICE by Richard K Delmar, United States Department of the Treasury, Janet Yellen *of Supplemental Authority* (Attachments: # 1 Exhibit E.D. Mo. Decision)(Roberts, Charles) (Entered: 05/12/2021) |
| 05/12/2021 | 57 | | NOTICE by Richard K Delmar, United States Department of the Treasury, Janet Yellen *of Supplemental Authority* (Attachments: # 1 Exhibit A: S.D. Ohio Opinion)(Ehrlich, Stephen) (Entered: 05/12/2021) |
| 05/13/2021 | 58 | | MOTION to Intervene *and Memorandum In Support Of The Motion* by Wisconsin Legislature. (Attachments: # 1 Exhibit A Proposed Complaint In Intervention, # 2 Exhibit B Proposed Motion To Join Plaintiffs Motion For Preliminary Injunction)(Shaner, John) (Entered: 05/13/2021) |
| 05/14/2021 | 59 | | REPLY Brief filed by Plaintiff Alabama, State of re: 21 MOTION for Preliminary Injunction *and Memorandum in Support of the Motion* filed by Alabama, State of. (LaCour, Edmund) (Entered: 05/14/2021) |
| 05/17/2021 | 60 | | TEXT ORDER: Anthony J. Galdieri moved for leave to appear pro hac vice 53 . His motion is GRANTED. Signed by Judge L Scott Coogler on 5/17/2021. (PSM) (Entered: 05/17/2021) |
| 05/19/2021 | 61 | | ORDER The Wisconsin Legislature "move[d] to intervene in this matter." ( 58 at 2.) The defendants have ten (10) days from this Order's entry to show cause andexplain why the Court should not grant this motion. Signed by Judge L Scott Coogler on 5/19/2021. (PSM) (Entered: 05/19/2021) |
| 05/19/2021 | 62 | | NOTICE by Alabama, State of re 21 MOTION for Preliminary Injunction *and Memorandum in Support of the Motion Joint Notice re Parties' Negotiations and Possible Hearing* (LaCour, Edmund) (Entered: 05/19/2021) |
| 05/20/2021 | 63 | | MOTION for Leave to Appear Pro Hac Vice *of Misha Tseytlin* by Wisconsin Legislature. (Shaner, John) (Entered: 05/20/2021) |
| 05/20/2021 | | | PHV Fee paid: $ 75, receipt number 1126–3843644 (ALND receipt #B4601113482). (Shaner, John) Modified on 5/20/2021 (MEB2). (Entered: 05/20/2021) |
| 05/20/2021 | 64 | | MOTION for Leave to Appear Pro Hac Vice *of Sean T.H. Dutton* by Wisconsin Legislature. (Shaner, John) (Entered: 05/20/2021) |

| 05/20/2021 | | | PHV Fee paid: $ 75, receipt number 1126−3843654 (ALND receipt #B4601113483). (Shaner, John) Modified on 5/20/2021 (MEB2). (Entered: 05/20/2021) |
|---|---|---|---|
| 05/26/2021 | 65 | | Consent MOTION to Stay *Deadline to Answer or Otherwise Respond to Complaint* by Richard K Delmar, United States Department of the Treasury, Janet Yellen. (Attachments: # 1 Text of Proposed Order)(Clendenen, Michael) (Entered: 05/26/2021) |
| 05/27/2021 | 66 | | TEXT ORDER: Misha Tseytlin and Sean T.H. Dutton have moved for leave to appear pro hac vice 63 64 . Their motions are GRANTED. Signed by Judge L Scott Coogler on 5/27/2021. (MEB2) (Entered: 05/27/2021) |
| 05/28/2021 | 67 | | RESPONSE in Opposition re 58 MOTION to Intervene *and Memorandum In Support Of The Motion* filed by Richard K Delmar, United States Department of the Treasury, Janet Yellen. (Clendenen, Michael) (Entered: 05/28/2021) |
| 06/01/2021 | 68 | | TEXT ORDER: The Court GRANTS Defendants' Consent Motion to Stay Deadline to Answer or Otherwise Respond to Complaint 65 . Signed by Judge L. Scott Coogler on 6/1/21. (CMB) (Entered: 06/01/2021) |
| 06/04/2021 | 69 | | REPLY Brief filed by Intervenor Plaintiff Wisconsin Legislature re: 58 MOTION to Intervene *and Memorandum In Support Of The Motion* filed by Wisconsin Legislature. (Tseytlin, Misha) (Entered: 06/04/2021) |
| 07/02/2021 | 70 | | NOTICE by Alabama, State of *of Supplemental Authority* (Attachments: # 1 Exhibit Ohio v. Yellen, No.1:21−cv−181 (S.D. Ohio July 1, 2021))(LaCour, Edmund) (Entered: 07/02/2021) |
| 07/14/2021 | 71 | | MEMORANDUM OF OPINION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION – For the reasons explained within, The Plaintiff States' Motion for a Preliminary Injunction 21 is DENIED. Signed by Judge L Scott Coogler on 7/14/2021. (MEB2) (Entered: 07/14/2021) |
| 07/15/2021 | 72 | | Joint MOTION *for Briefing Schedule* by Alabama, State of. (LaCour, Edmund) (Entered: 07/15/2021) |
| 07/16/2021 | 73 | | TEXT ORDER granting 72 Joint Motion for Briefing Schedule. Signed by Judge L. Scott Coogler on July 16, 2021. (ABN) (Entered: 07/16/2021) |
| 07/29/2021 | 74 | | STIPULATION *Joint Stipulation of Facts* by Alabama, State of. filed by Alabama, State of (LaCour, Edmund) (Entered: 07/29/2021) |
| 07/29/2021 | 75 | | MOTION for Permanent Injunction , MOTION for Declaratory Judgment by Alabama, State of. (Attachments: # 1 Exhibit Revenue−Related Laws, # 2 Exhibit Albritton Declaration)(LaCour, Edmund) (Entered: 07/29/2021) |
| 08/12/2021 | 76 | | MOTION to Dismiss *and Opposition to Plaintiffs' Motion for Permanent Injunction and Declaratory Judgment* by Richard K Delmar, United States Department of the Treasury, Janet Yellen. (Ehrlich, Stephen) (Entered: 08/12/2021) |
| 08/19/2021 | 77 | | REPLY to Response to Motion re 76 MOTION to Dismiss *and Opposition to Plaintiffs' Motion for Permanent Injunction and Declaratory Judgment*, 75 MOTION for Permanent Injunction MOTION for Declaratory Judgment filed by Alabama, State of. (LaCour, Edmund) (Entered: 08/19/2021) |

| 08/26/2021 | 78 | | MOTION to Withdraw as Attorney by West Virginia, State of. (Lee, Jessica) (Entered: 08/26/2021) |
|---|---|---|---|
| 08/26/2021 | 79 | | REPLY to Response to Motion re 76 MOTION to Dismiss *and Opposition to Plaintiffs' Motion for Permanent Injunction and Declaratory Judgment*, 75 MOTION for Permanent Injunction MOTION for Declaratory Judgment filed by Richard K Delmar, United States Department of the Treasury, Janet Yellen. (Ehrlich, Stephen) (Entered: 08/26/2021) |
| 08/27/2021 | 80 | | TEXT ORDER granting 78 Motion to Withdraw as Attorney. Attorney Jessica Anne Lee terminated. Signed by Judge L. Scott Coogler on August 27, 2021. (ABN) (Entered: 08/27/2021) |
| 09/27/2021 | 81 | | NOTICE by Alabama, State of *of Supplemental Authority* (Attachments: # 1 Exhibit A – Commonwealth of KY v Yellen Opinion and Order)(LaCour, Edmund) (Entered: 09/27/2021) |
| 11/15/2021 | 82 | 30 | MEMORANDUM OF OPINION. Signed by Judge L Scott Coogler on 11/15/2021. (PSM) (Entered: 11/15/2021) |
| 11/15/2021 | 83 | 84 | FINAL JUDGMENT As discussed in the accompanying Memorandum of Opinion, the following rulings are hereby made: 1) the Wisconsin Legislature's motion to intervene as a plaintiff in this action 58 is hereby DENIED; 2) the Plaintiff States' motion for a final judgment in their favor 75 is hereby GRANTED;3) Defendant, the Secretary of the Treasury, is hereby PERMANENTLY ENJOINED from seeking enforcement of the Tax Mandate, 42 U.S.C. § 802(c)(2)(A), against the Plaintiff States; 4) given that injunction, the Plaintiff States' request for declaratory relief (as argued in 75 ) is hereby DENIED; 5) Defendants' motion to dismiss this action 76 is hereby DENIED. Only to the extent provided by law are costs taxed against the Defendants. Signed by Judge L Scott Coogler on 11/15/2021. (PSM) (Entered: 11/15/2021) |
| 12/20/2021 | 84 | | MOTION for Leave to Appear Pro Hac Vice *On Behalf of Plaintiff* by Alaska, State of. (Attachments: # 1 Supplement Declaration of Bryan M. Taylor)(Gramling, Mary Hunter) (Entered: 12/20/2021) |
| 12/27/2021 | 85 | | MOTION to Substitute Attorney by Alaska, State of. (Gramling, Mary Hunter) (Entered: 12/27/2021) |
| 01/11/2022 | | | PHV Fee paid: $75, receipt number B4601117752 (KAM) (Entered: 01/11/2022) |
| 01/12/2022 | 86 | | TEXT ORDER granting 84 Motion for Leave to Appear Pro Hac Vice. Signed by Judge L. Scott Coogler on January 12, 2022. (ABN) (Entered: 01/12/2022) |
| 01/12/2022 | 87 | | TEXT ORDER granting 85 Motion to Substitute Attorney. Attorney John Ptacin terminated. Signed by Judge L. Scott Coogler on January 12, 2022. (ABN) (Entered: 01/12/2022) |
| 01/14/2022 | 88 | 28 | NOTICE OF APPEAL as to 83 Order Dismissing Case,,, 82 Memorandum Opinion by Richard K Delmar, United States Department of the Treasury, Janet Yellen. (Roberts, Charles) (Entered: 01/14/2022) |
| 01/14/2022 | 89 | 27 | TRANSMITTAL LETTER re 88 Notice of Appeal. (PSM) (Entered: 01/14/2022) |

**FILED**

2022 Jan-14  AM 08:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**Northern District of Alabama**
**Office of the Clerk**
**Hugo L. Black United States Courthouse**
**Room 140, 1729 5th Avenue North**
**Birmingham, Alabama 35203**
**(205) 278-1700**

January 14, 2022

Clerk
U.S. Court of Appeals, 11th Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303

U.S.D.C. No. 7:21-cv-465-LSC
U.S.C.A. No. NEW
IN RE: West Virginia, State of, et al. v United States Department of the Treasury et al.

Enclosed are documents regarding an appeal in this matter.  Please acknowledge receipt on the enclosed copy of this transmittal.

X        Certified copy of Notice of Appeal, Docket Entries and Judgment/Order and Opinion appealed from enclosed.  Please check
         if judgment was oral:

         Certified record  supplemental record on appeal consisting of:  volume(s) of pleadings, etc.;  volume(s) of transcripts;

X        First Notice of Appeal? YES  Dates of other Notices:

         The following materials **SEALED** in this court (order enclosed) consisting of:

         Original papers (court file) and certified copy of docket entries per USCA request.

X        There was no hearing from which a transcript could be made.

         Copy of CJA Form 20 or District Court order appointing counsel.

X        The appellant docket fee has been paid.  WAIVED (USA)  Date Paid:

         The appellant has been  leave to appeal in forma pauperis and  a request for certificate of appealability (order enclosed).

X        The Judge/Magistrate Judge appealed from is: Judge L. Scott Coogler

         The Court Reporter is:

         This is a **BANKRUPTCY APPEAL**.  Please send notice of final order and/or opinion to: Scott W. Ford, Acting Clerk, U.S.
         Bankruptcy Court, 1800 5th Avenue North, Birmingham, Alabama 35203.

         This is a **DEATH PENALTY** appeal.

         Appellant having failed to cure procedural defects re: appeal fee, the appeal is due to be DISMISSED.

         Other:

xc:  Counsel                           Sharon Harris, Clerk

                                       By:_____S. Murray _____
                                              Deputy Clerk

FILED

2022 Jan-14  AM 07:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

STATE OF WEST VIRGINIA, *et al.*,

    Plaintiffs,

    v.

U.S. DEPARTMENT OF THE
TREASURY, *et al.*,

    Defendants.

Case No. 7:21-cv-00465-LSC

## NOTICE OF APPEAL

Notice is hereby given that Defendants the United States Department of the Treasury, Janet Yellen, in her official capacity as Secretary of the Treasury, and Richard K. Delmar, in his official capacity as Acting Inspector General of the Department of the Treasury, appeal to the United States Court of Appeals for the Eleventh Circuit from this Court's Judgment (Docket No. 83) and Memorandum of Opinion (Docket No. 82) entered November 15, 2021.

DATED: January 14, 2022            Respectfully submitted,

                                   BRIAN M. BOYNTON
                                   Acting Assistant Attorney General

                                   BRIAN D. NETTER
                                   Deputy Assistant Attorney General

                                   ALEXANDER K. HAAS
                                   Director, Federal Programs Branch

                                   BRIGHAM J. BOWEN
                                   Assistant Director, Federal Programs Branch

                                   */s/ Charles E.T. Roberts*
                                   MICHAEL P. CLENDENEN
                                   STEPHEN EHRLICH
                                   CHARLES E.T. ROBERTS
                                   Trial Attorneys
                                   Civil Division, Federal Programs Branch
                                   U.S. Department of Justice
                                   1100 L Street, NW
                                   Washington, DC  20005
                                   Phone: (202) 305-8628
                                   Email: charles.e.roberts@usdoj.gov

                                   *Counsel for Defendants*

FILED
2021 Nov-15  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| State of West Virginia, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 7:21-cv-00465-LSC |
| | ) | |
| United States Department of | ) | |
| Treasury, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

On March 31, 2021, Plaintiffs West Virginia, Alabama, Arkansas, Alaska, Florida, Iowa, Kansas, Montana, New Hampshire, Oklahoma, South Carolina, South Dakota, and Utah (hereinafter, "the Plaintiff States") brought this action against the United States Department of the Treasury ("Treasury"), Treasury Secretary Janet Yellen in her official capacity ("the Secretary"), and Treasury Inspector General Richard Delmar in his official capacity (collectively, "the Defendants"). The Plaintiff States seek to invalidate and enjoin a provision of the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, § 9901, 135 Stat. 4 (2021) (codified at 42 U.S.C. §§ 802 *et seq.*).

The ARPA is a $1.9 trillion economic stimulus bill that was passed by Congress and signed into law by President Biden on March 11, 2021. It was enacted to hasten the United States' recovery from the economic impact of the COVID-19 pandemic and accompanying recession. The ARPA distributes roughly $195.3 billion directly to the States for specified purposes. 42 U.S.C. § 802(b)(3)(A). However, before a State can receive those funds, it must certify to the Secretary that it will comply with multiple conditions that the ARPA imposes. *Id.* § 802(d)(1). The Plaintiff States contend that one of those conditions—what this opinion will refer to as the "Tax Mandate"—exceeds Congress's power under the Spending Clause of Article I, Section 8 of the U.S. Constitution because it is ambiguous, coercive, and unrelated to the ARPA's purpose. The Plaintiff States also claim that the Tax Mandate violates the Tenth Amendment to the U.S. Constitution and the anti-commandeering doctrine because it intrudes into their sovereignty by prohibiting States from reducing taxes for the next three years. Their Complaint seeks a declaration from this Court stating as much and an order permanently enjoining enforcement of the Tax Mandate against them. (*See* doc. 1).

The Court has previously entered one opinion and order in this case, denying the Plaintiff States' motion for a preliminary injunction of the Tax Mandate during the pendency of this litigation. This opinion considers three motions that are

currently pending. The Wisconsin Legislature has moved to intervene as a plaintiff in this lawsuit. (Doc. 58.) Additionally, the existing parties have filed warring motions, the resolution of which will conclude this litigation: the Plaintiff States' motion for a final judgment that would declare the Tax Mandate unconstitutional and permanently enjoin its enforcement (doc. 75) and the Defendants' motion to dismiss the Plaintiff States' Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted (doc. 76).

After providing background information on the ARPA, the Tax Mandate, and events that occurred after its enactment, the Court will consider whether it continues to have subject matter jurisdiction over this action, concluding that it does. The Court will then explain why the Wisconsin Legislature is not entitled to intervene as a plaintiff in this action. Finally, the Court will discuss why the Plaintiff States' motion for a final judgment and permanent injunction is due to be granted and the Defendants' motion to dismiss is due to be denied. Accordingly, the Court will permanently enjoin the Secretary from seeking enforcement of the Tax Mandate against the Plaintiff States.[1]

---

[1]     This lawsuit by thirteen Plaintiff States is one of six around the country with nearly identical complaints. Four cases have already been decided with vastly different results. In two of the four, district courts in Missouri and Arizona dismissed the complaints, finding that those States lack standing. *See Arizona v. Yellen*, 2021 WL 3089103, at *6 (D. Ariz. July 22, 2021), appeal filed, No. 21-16227 (9th Cir. July 26, 2021); *Missouri v. Yellen*, 2021 WL 1889867, at *5 (E.D. Mo. May 11, 2021), appeal filed, No. 21-2118 (8th Cir. May 18, 2021). In Ohio, however, a district court ruled

## II.    Background

The COVID-19 pandemic has caused ongoing economic harm to individuals,

businesses, and state and local governments. To ease the financial strain, in March

2020, Congress provided $150 billion in direct assistance for state, local, and Tribal

governments under the Coronavirus Aid, Relief, and Economic Security Act

("CARES Act"). *See* Pub. L. No. 116-137, § 5001, 134 Stat. 281, 501 (2020) (codified

at 42 U.S.C. § 801). However, economic distress continued. Accordingly, on March

11, 2021, the 117th Congress passed, and President Joseph Biden signed, the ARPA,

which appropriated approximately $1.9 trillion to provide relief to address the impact

of the COVID-19 pandemic. *See* 42 U.S.C. § 802 *et seq.* Out of the roughly $1.9

trillion that the ARPA allocates for pandemic relief, around $195.3 billion is tapped

for the States. *Id.* § 802(b)(3)(A). These funds represent an average of about 25% of

the thirteen Plaintiff States' annual budgets. (Doc. 1 ¶¶ 45–57.) In Arkansas, for

instance, anticipated ARPA funding represents 29% of the State's annual budget. (*Id.*

---

that Ohio had standing to sue and granted its motion for a permanent injunction solely on the
ground that the Tax Mandate is unconstitutionally ambiguous under the Spending Clause. *See Ohio
v. Yellen*, 2021 WL 2712220, at *22 (S.D. Ohio July 1, 2021), appeal filed, No. 21-3787 (6th Cir.
Sept. 3, 2021). Similarly, a district court in Kentucky ruled that Tennessee and Kentucky
possessed standing, but it granted their motion for a permanent injunction solely on a different
ground: that the Tax Mandate is unconstitutionally coercive under the Spending Clause. *See
Kentucky v. Yellen*, 2021 WL 4394249, at *9 (E.D. Ky. Sept. 24, 2021). A lawsuit brought by Texas,
Louisiana, and Mississippi challenging the Tax Mandate remains pending. *See Texas, et al. v.
Yellen*, No. 2:21-cv-00079-Z (N.D. Tex.).

¶ 117.) For West Virginia and Arkansas, it represents over 25% (*id.* ¶ 47, 53); for Alabama, over 21% (*id.* ¶ 50); and Kansas, over 20% (*id.* ¶ 56).

The federal funds come with certain strings attached. To qualify for the funding, a State must "provide the Secretary with a certification, signed by an authorized officer of such State . . . that such State . . . requires the payment . . . to carry out the activities specified in subsection (c) . . . and will use any payment under this section . . . in compliance with subsection (c)." 42 U.S.C. § 802(d)(1). The Secretary is to "make the payment required for the State . . . not later than 60 days after the date on which th[at] certification . . . is provided to the Secretary." *Id.* § 802(b)(6)(A)(i).

As the above language suggests, the conditions are set forth in subsection (c). In that section, Congress specified that States must use ARPA funds to respond to the negative economic impacts of the COVID-19 pandemic in one of four specific ways: (1) providing assistance to "households, small businesses, and nonprofits" and "impacted industries such as tourism, travel, and hospitality"; (2) responding "to workers performing essential work during the COVID-19 public health emergency by providing premium pay to eligible workers"; (3) making up for pandemic-related reductions in state government revenue; and (4) paying for "necessary investments in water, sewer, or broadband infrastructure." *Id.* §

802(c)(1)(A-D). The States must use the funds by December 31, 2024. *Id.* §
802(c)(1).

The ARPA also contains two restrictions on the States' use of the federal
funds. One limitation (not challenged here) provides that a State may not deposit
ARPA funds "into any pension fund." *Id.* § 802(c)(2)(B). The other limitation (the
Tax Mandate) provides as follows:

(2) FURTHER RESTRICTION ON USE OF FUNDS. —

(A) IN GENERAL. — A State or territory shall not use the funds
provided under this section or transferred pursuant to section 603(c)(4)
to either directly or indirectly offset a reduction in the net tax revenue
of such State or territory resulting from a change in law, regulation, or
administrative interpretation during the covered period that reduces
any tax (by providing for a reduction in a rate, a rebate, a deduction, a
credit, or otherwise) or delays the imposition of any tax or tax increase.

*Id.* § 802(c)(2)(A). The phrase "directly or indirectly offset" is not defined in the
ARPA. The ARPA requires any State that receives funds to "provid[e] a detailed
accounting" to the Secretary of "all modifications to the State's . . . tax revenue
sources" for the covered period, as well as "such other information as the Secretary
may require for the administration of" the Tax Mandate. *Id.* § 802(d)(2). The
Secretary can recoup funds that she interprets were used in violation of the Tax
Mandate. *Id.* § 802(e)(1). The Tax Mandate's "covered period" extends from
March 3, 2021, until all funds "have been expended or returned to, or recovered by,

the Secretary." *Id.* § 802(g)(1). The ARPA also authorizes the Secretary "to issue such regulations as may be necessary or appropriate to carry out" the applicable statutory provisions. *Id.* § 802(f).

On March 16, 2021, twenty-one State attorneys general wrote a letter to the Secretary, seeking guidance as to the scope of the Tax Mandate. (Doc. 21–1 at 4.) The letter listed several tax cuts proposed by legislatures in various States and asked if those cuts would expose the States to ARPA recoupment. The letter included the following concern:

> The import of [the ARPA's] prohibition against "offsetting" reductions in state tax revenue is unclear, but potentially breathtaking. This provision might have been intended merely to prohibit States from *expressly* taking COVID-19 relief funds and rolling them directly into a tax cut of a similar amount. But its prohibition on "indirectly" offsetting reductions in tax revenue, combined with the list of prohibited kinds of tax reductions (rate cuts, rebates, deductions, credits, or "otherwise"), could also be read to prohibit tax cuts or relief of any stripe, even if wholly unrelated to and independent of the availability of relief funds. After all, money is fungible, and States must balance their budgets. So, in a sense, *any* tax relief enacted by a state legislature after the State has received relief funds could be viewed as "using" those funds as an "offset" that allows the State to provide that tax relief.

(*Id.* at 5.)

The Secretary responded on March 23, 2021, writing as follows:

Nothing in the Act prevents States from enacting a broad variety of tax cuts. That is, the Act does not "deny States the ability to cut taxes in any manner whatsoever." It simply provides that funding received

under the Act may not be used to offset a reduction in net tax revenue. If states lower certain taxes but do not use funds under the Act to offset those cuts—for example, by replacing the lost revenue through other means—the [Tax Mandate] is not implicated.

(*Id.* at 12.) The Secretary's letter did not respond to the States' questions regarding the specific tax modification proposals pending in the States.

On March 31, 2021, the Plaintiff States, believing the Tax Mandate to be unconstitutional, sued for declaratory and injunctive relief in this Court. The Plaintiff States alleged in their Complaint that they are or were actively considering various forms of tax relief for individuals and small businesses, whether directly related to state pandemic-relief efforts or through unrelated policy measures. (Doc. 1 ¶¶ 76–83.) They claim that the Tax Mandate has cast significant uncertainty over these efforts as it is unclear whether States can pass any tax relief measures throughout the covered period without running afoul of the Tax Mandate and thus being forced to repay some or all of the federal funds to the Treasury. The Plaintiff States' Complaint alleges that the Federal Tax Mandate is unconstitutional for two reasons: (1) it violates the Spending Clause of the U.S. Constitution by being coercive, ambiguous, and unrelated to the ARPA's purpose (Count 1); and (2) it violates the Tenth Amendment to the U.S. Constitution in that it commandeers state taxing authority (Count 2).

On April 13, 2021, the Plaintiff States moved in this Court, pursuant to Federal Rule of Civil Procedure 65, for an order preliminarily enjoining enforcement of the Tax Mandate, while keeping the remainder of the ARPA intact, while this lawsuit is pending. (Doc. 21.) The Defendants responded in opposition to the motion, claiming that this Court does not have jurisdiction because the Plaintiff States lack standing and their claims are not yet ripe, and that, on the merits, the Plaintiff States failed to show that a preliminary injunction is warranted. (Doc. 54.) The Plaintiff States, as well as numerous amici, replied in support of their motion. (Docs. 59, 41, 42, 43, 44, and 48).

On May 13, 2021, while the motion for a preliminary injunction was still pending, the Wisconsin Legislature moved to intervene as a Plaintiff in this lawsuit pursuant to Federal Rule of Civil Procedure 24. (Doc. 58.) The Wisconsin Legislature attached a Proposed Complaint in Intervention (doc. 58-1) and a proposed motion to join in the Plaintiff States' motion for a preliminary injunction (doc. 58-2). The Plaintiff States consented to the Wisconsin Legislature's request (*see* doc. 58 at 2), but the Defendants opposed it (doc. 67).

On May 17, 2021, the Secretary published a 66-page Interim Final Rule (hereinafter the "Final Rule") in the Federal Register, which expounded on the ARPA, including the Tax Mandate. *See* 86 Fed. Reg. 26786–824. Relevant here, the

Final Rule states that "because money is fungible," even ARPA funds "not *explicitly or directly* used to cover the costs of changes that reduce net tax revenue . . . may be used in a manner inconsistent with the statute by *indirectly* being used to substitute for the State's or territory's funds that would otherwise have been needed to cover the costs of the reduction." *Id.* at 26807 (emphasis added).

The Final Rule creates a framework for identifying illegal offsets under the Tax Mandate. First, every fiscal year during the covered period, States use their ordinary budget-scoring process to "identify and value" anticipated legislative and administrative actions that might reduce net tax revenue. *Id*. If there are such reductions, the State must "pay for" them with sources other than ARPA funds. *Id.* However, if the State's covered changes are anticipated to decrease revenue by one percent or less of the State's 2019 inflation-adjusted revenue, the decreases are deemed "de minimis" and will not be subject to recoupment. *Id.* at 26807–08. A State also falls within a safe harbor from the Tax Mandate if its actual tax revenue for a fiscal year exceeds its inflation-adjusted 2019 tax revenue. *Id.* at 26807, 26809. If neither the de minimis exception nor the safe harbor applies, and the State's actual tax revenue in the reporting year is less than the State's inflation-adjusted 2019 tax revenue, the State will identify any sources of funds that have been used to permissibly offset the total value of covered tax changes. *Id.* at 26807. These include

any tax changes that increase tax revenue and any spending cuts in "areas" where the State is not spending ARPA funds. *Id.* at 26808. The State then subtracts those permissible offsets from the total value of revenue-reducing changes calculated in the first step to determine what portion of the revenue-reducing changes has not been paid for. *Id.* at 26807, 26809–10, 26823. The State is then potentially subject to recoupment for that amount or the difference between the State's actual tax revenue and its inflation-adjusted 2019 tax revenue, whichever is greater. *Id.* If there are amounts that could be subject to recoupment, the Treasury will provide notice to the State and the State will have an opportunity to respond. *Id.* at 26808.

To determine which spending cuts are "covered," the Treasury's supervision must extend beyond how States are spending ARPA funds to also cover how States are spending State funds. Spending cuts in "areas" where States spent ARPA funds are not "covered spending cuts" and thus cannot offset a decrease in revenue. *Id.* at 26810. Even a spending cut that a State thinks would qualify as covered in one year may become an uncovered spending cut years later. The Treasury promises to "monitor changes in spending throughout the covered period," and if a spending cut in one year is, years later, "replaced with [ARPA] Funds and used to indirectly offset a reduction in net tax revenue resulting from a covered change, Treasury may consider such change to be an evasion of the restrictions of the offset provision and

seek recoupment of such amounts." *Id*. Ultimately, "all relevant facts and circumstances" are considered when the Treasury determines whether a State has violated the Tax Mandate. *Id*.

On July 14, 2021, this Court denied the Plaintiff States' motion for a preliminary injunction. (Doc. 71; *West Virginia v. U.S. Dep't of Treasury*, 2021 WL 2952863 (N.D. Ala. July 14, 2021)). With regard to the jurisdictional question, this Court determined that the Plaintiff States alleged facts sufficient to establish standing and that their claims are ripe because they properly alleged several different injuries in fact: they were not offered a clear understanding of the deal that Congress is offering because of the Tax Mandate's ambiguity; their sovereignty was intruded upon by having to choose between forgoing a benefit (federal funds) or accepting that benefit on unconstitutional terms; and there is a credible threat of enforcement in the form of a recoupment action. (Doc. 71 at 14–20.) This Court refrained from deciding whether the Plaintiff States were likely to succeed on the merits of their constitutional claims, instead concluding that preliminary injunctive relief was not warranted because the Plaintiff States could not establish that a preliminary injunction would remedy the irreparable injury they had already suffered or were likely to suffer. This was so for several reasons. For one, recoupment of ARPA funds is not an irreparable injury because this Court could return the funds to the Plaintiff

States if the Secretary recouped them during the pendency of this lawsuit and this Court ultimately invalidated the Tax Mandate. Additionally, preliminarily enjoining the Secretary from recouping ARPA funds while this action is pending would not have remedied the harm that the Plaintiff States claimed to suffer because they still had to take into consideration, when deciding whether to accept ARPA funds, that the funds would be subject to possible recoupment if this Court were to ultimately issue a merits decision declining to invalidate the Tax Mandate. This Court noted that the only difference in whether this Court granted or denied the motion for a preliminary injunction was that, if the Court granted the motion, the Secretary could not recoup funds from that point until the point that this Court decided the ultimate issues in this case, and there was virtually no likelihood that the Secretary would recoup ARPA funds from the Plaintiff States during that short—likely only months-long—time frame.

Immediately after the Court denied the motion for a preliminary injunction, the parties filed, and the Court granted, a joint motion for an expedited briefing schedule relating to motions for final resolution of this case, acknowledging that this dispute presents purely legal issues. On July 29, 2021, the Plaintiff States moved for a final judgment, permanent injunction, and declaratory judgment. (Doc. 75.) In support of their motion, the Plaintiff States provided a list of some of the revenue-

related laws that each of the thirteen Plaintiff States has passed since the enactment of the ARPA in March 2021. (Doc. 75-1.) The Plaintiff States also provided the declaration of an Alabama State Senator, Greg Albritton. (Doc. 75-2.) The Defendants responded in opposition to the Plaintiff States' motion for a permanent injunction and moved to dismiss the Plaintiff States' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. (Doc. 76.)

According to a joint stipulation of facts submitted by the parties, as of July 23, 2021, the following Plaintiff States have submitted to the Secretary signed certifications under 42 U.S.C. § 802(d), agreeing to abide by the Tax Mandate, and have received funds under the ARPA: Alabama, Arkansas, Alaska, Florida, Iowa, Kansas, Montana, New Hampshire, Utah, and West Virginia. *(*Doc. 74.) Wisconsin has done so as well, according to the Treasury in its response in opposition to the Wisconsin Legislature's motion to intervene. (Doc. 67 at 14.) As of August 12, 2021, those ten Plaintiff States had received over $10.6 billion in federal funds through the ARPA. The remaining Plaintiff States—Oklahoma, South Carolina, and South Dakota—had not yet provided certifications to the Secretary as of August 2021.

With these factual developments in mind, the Court turns to the matters before the Court.

## III.   Discussion

### A.   Jurisdiction

Although the Court ruled that it has jurisdiction over this action in its earlier opinion considering the Plaintiff States' request for a preliminary injunction, *see* doc. 71 at 18–20, because the Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based upon the doctrines of standing, ripeness, and mootness, this Court will once again consider its power to hear this case. *See also RES-GA Cobblestone, LLC v. Blake Const. & Dev., LLC*, 718 F.3d 1308, 1313 (11th Cir. 2013) ("Federal courts operate under a continuing obligation to inquire into the existence of subject matter jurisdiction whenever it may be lacking.").

Article III of the U.S. Constitution restricts federal courts to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing is a doctrine that 'stems directly from Article III's "case or controversy" requirement,' and thus it 'implicates [this Court's] subject matter jurisdiction.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)). Plaintiffs are required to "'alleg[e] such a personal stake in the outcome of the controversy' as to . . . justify [the] exercise of the court's remedial powers on [their] behalf." *Simon v. E. Ky. Welfare*

*Rights Org.*, 426 U.S. 26, 38 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)). Further, "'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Standing is assessed under the facts as they existed when the complaint was filed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 606 n.4 (1992).

To show standing, a plaintiff must generally demonstrate that he suffered or shall immediately suffer an injury in fact, that the injury was caused by the defendant's conduct, and that the injury is redressable by a favorable court decision. *See Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1159 (11th Cir. 2008). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual and imminent, not 'conjectural or hypothetical.'" *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

The dispute between the parties as to standing centers on the question of injury in fact. The Defendants assert that the Plaintiff States have not proved that there is an imminent threat of enforcement of the Tax Mandate or that they have suffered any other cognizable injury.[2] In contrast, the Plaintiff States contend that

___

[2]    Relatedly, the Defendants assert that the Plaintiff States' claims are not ripe. The ripeness inquiry requires a two-part determination of "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 148–49

they have suffered harm to their sovereign power to set tax policy since the date on which the Tax Mandate became effective, whether or not they certify compliance with the ARPA's conditions or the Secretary ever initiates recoupment proceedings, because the Tax Mandate does not define how States might use ARPA funds to indirectly offset any net tax revenue reductions caused by a change in state law.

As this Court noted at the preliminary injunction stage, the Supreme Court has likened Congress's conditioning of federal money to a contract: "in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Just as a contract requires a knowing acceptance of the offer's terms, conditioned federal money must "enable the States to exercise their choice knowingly, cognizant of the consequences of" their acceptance. *Id*. The Court in *Pennhurst* continued, "There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* (internal citations and footnote omitted). Taking note of this Spending Clause jurisprudence,

---

(1967)). "Courts must resolve 'whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.'" *Id.* (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). For the same reasons that the Plaintiff States have standing, as discussed below, their claims are ripe.

this Court concluded that, because Congress is required to clearly state the terms upon which it extends an offer of conditional funding to the States, the Plaintiff States had established that they were entitled to clarity regarding the strings attached when presented with an offer of conditional funding. This Court ruled that such clarity is critical to a State's ability to exercise its sovereign prerogative of deciding whether to accept that offer. Thus, the Court found that the Plaintiff States had shown that they suffered an injury in fact when they were presented with an unconstitutionally ambiguous spending condition. Further, because there is no question that the alleged injury in fact is fairly traceable to the Tax Mandate and can be redressed by a court order invalidating the mandate, *see Browning*, 522 F.3d at 1159, the Court found that the Plaintiff States possessed standing.

The Defendants present various arguments seeking a different result now, but none has merit. First, they contend that the original harm that the Plaintiff States claimed in filing suit—the difficulty that the Tax Mandate's ambiguity created for them in deciding whether to accept ARPA funding—ended for ten of the thirteen Plaintiff States when they made the decision to certify compliance with the ARPA, binding them to its terms. According to the Defendants, accepting the deal moots the injury as to those ten States.

As an initial matter, standing is measured at the time the lawsuit is filed based on the facts as they existed at that time. *Lujan*, 504 U.S. at 569 n.4. Thus, the Plaintiff States do not relinquish their standing to sue due to subsequent events. However, if events that occur subsequent to the filing of a lawsuit deprive the court of the ability to give a plaintiff meaningful relief, then the case is moot and must be dismissed. *See, e.g., Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam). Granted, for ten of the Plaintiff States, one type of harm that they incurred in contemplating whether to accept an ambiguous deal has now been extinguished in that they have made that decision. However, these ten States continue to suffer the closely related harm to their sovereign authority to set their own tax policies. Indeed, the Supreme Court has long recognized the States' sovereign authority to tax as "indispensable" to the States' very "existence." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 199 (1824); *see also McCulloch v. Maryland*, 17 U.S. 316, 428 (1819) ("[T]he power of taxing the people and their property[] is essential to the very existence of government."). The Plaintiff States have sufficiently demonstrated that their legislatures do not have sufficient information in considering tax changes to determine the impact such changes will have on their ability to retain the federal grant money. As stated by Alabama State Senator Albritton in his declaration submitted by the Plaintiff States, it is crucial that State legislatures understand the financial effects of revenue laws that they pass to

effectively craft state budgets, and the uncertainty surrounding the Tax Mandate has caused at least one bill in the Alabama legislature to fail despite widespread approval by legislators and constituents, due to fear that the Secretary could interpret the reduction as triggering a right to recoupment. (Doc. 75-2.) Thus, the Plaintiff States have shown that they are subject to continuous and ongoing harm even if no recoupment action ever happens because of the harm that the Tax Mandate inflicts on the legislative process. And they are experiencing these injuries now, making them "actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560. Accordingly, the fact that ten Plaintiff States have now accepted the deal certainly does not moot this Court's ability to give them meaningful relief by way of invalidating the Tax Mandate.

The second challenge that the Defendants present to the Plaintiff States' standing is to stress that the evidentiary showing required to establish standing is greater at this stage of the litigation, where final relief is sought, than it was at the preliminary injunction stage. The burden of proof in establishing standing does increase "with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561. The Defendants argue that at final judgment, that means that the Plaintiff States must provide evidence to prevail. While that may be correct, it does not impact the Court's earlier legal conclusion that the Plaintiff

States have already suffered and continue to suffer an injury in fact due to being presented with an ambiguous deal. Moreover, the Plaintiff States have bolstered their allegations with a list of revenue-related laws passed by the thirteen States since the ARPA's passing as well as a declaration by a State senator. (*See* docs. 75-1, 75-2.) It is unclear, and the Defendants have not suggested, what additional evidence the Plaintiff States could or would be able to present on this front.

Finally, the Defendants resist the conclusion that the Plaintiff States have met the injury in fact element of the standing inquiry by emphasizing their arguments about the substantive validity of the Tax Mandate. They argue that the plain text of the Tax Mandate does not actually prohibit States from reducing their own taxes and that the Tax Mandate is sufficiently clear under the Supreme Court's Spending Clause jurisprudence because all that is required is that a recipient of federal funds know that a condition *exists*, not what it *means*. However, while standing "often turns on the nature and source of the claim asserted," it "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth*, 422 U.S. at 500. Thus, whether the Plaintiff States have standing to bring this lawsuit is not dependent on whether their constitutional claims ultimately succeed.[3]

---

[3]     The Court pauses to note that the Supreme Court has articulated an alternative method for a plaintiff to establish the injury in fact element of the standing inquiry when that plaintiff challenges the constitutionality of a statute that has yet to be enforced against him or her. When a plaintiff seeks to enjoin the future enforcement of a statute, "the injury-in-fact requirement"

In sum, the Defendants have not shown that the Court's earlier conclusion that the Plaintiff States have suffered an injury in fact for standing purposes was erroneous, and they have similarly not demonstrated that the matters at hand are moot. The Court once again concludes that it has jurisdiction over this action.

## B.    The Wisconsin Legislature's Motion to Intervene

The Wisconsin Legislature—not the State of Wisconsin—seeks to intervene as a Plaintiff in this action by right, pursuant to Federal Rule of Civil Procedure 24(a), or, if this Court does not grant intervention by right, it requests permissive intervention under Rule 24(b)(1)(B). Each request will be addressed in turn.

### 1.    *Intervention as of Right and Standing*

Under Rule 24(a)(2), a party may intervene as a matter of right if: (1) the application to intervene is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action, as a practical matter, may impede or impair

---

demands that the plaintiff "allege[] 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of [enforcement] thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The Court found at the preliminary injunction stage of this litigation that the Plaintiff States had also established an injury in fact under this alternative method. However, the Court now believes that this method of establishing an injury in fact is not well suited to the facts of this case. The Plaintiff States need not prove pre-enforcement standing because, as previously discussed, the Plaintiff States' injury has already occurred. In other words, whether they are injured is not dependent on whether the Secretary enforces the Tax Mandate against them in the future.

his ability to protect that interest; and (4) the applicant's interest will not be represented adequately by the existing parties to the suit. *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007). Importantly, "[a]ny party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007). "[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction."). This requirement stems from the rule that "at least one plaintiff must have standing to seek each form of relief requested in the complaint." *Laroe Ests.*, 137 S. Ct. at 1651.

Because the Wisconsin Legislature seeks relief not specifically sought by the Plaintiff States—a Court order invalidating the Tax Mandate that applies to the State of Wisconsin—the Wisconsin Legislature must establish its own standing aside from the standing of the Plaintiff States. The Court will thus first address whether the Wisconsin Legislature has standing to challenge the Tax Mandate before moving to the elements of intervention as of right. *See Steel Co. v. Citizens for a Better Env't*, 523

U.S. 83, 94 (1998) (when a court lacks jurisdiction, it "cannot proceed at all in any cause").

The Wisconsin Legislature asserts that it seeks "to protect the interests of the State of Wisconsin and its Legislature." (Doc. 58 at 5.) It contends that a Wisconsin statute authorizes it to represent the interests of the State of Wisconsin, which it alleges is being harmed by the Tax Mandate for the same reasons that the Plaintiff States have alleged. However, the Wisconsin Legislature cannot represent the interests of the State of Wisconsin in this context. "[I]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). The exception to this rule is that a party who lacks standing in their own right may represent the State only if State law authorizes that party "to speak for the State in federal court." *Id.* at 710; *see also Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019). Wisconsin law provides:

> The [Wisconsin] department of justice shall . . . appear for and represent the state . . . and prosecute or defend in any court or before any officer, any cause or matter, civil or criminal in which the state or the people of this state may be interested. The joint committee on legislative organization may intervene as permitted under § 803.09(2m) at any time.

Wis. Stat. § 165.25(1m). Thus, the proper entity to represent the interests of the State of Wisconsin is the Wisconsin department of justice in all cases unless the exception under § 803.09(2m) applies. That section states:

> When a party to an action challenges in state or federal court the constitutionality of a statute, facially or as applied, challenges a statute as violating or preempted by federal law, or otherwise challenges the construction or validity of a statute, as part of a claim or affirmative defense, the assembly, the senate, and the legislature may intervene . . .

*Id.* § 803.09(2m). Under § 803.09(2m), the Wisconsin Legislature may intervene to represent the State's interests in court only to defend the validity of a Wisconsin law. As the Wisconsin Supreme Court recently stated, "the statutory text [of § 803.09(2m)] unmistakably grants the Legislature an interest *in defending the validity of state law* when challenged in court." *Democratic Nat'l Comm. v. Bostelmann*, 949 N.W.2d 423, 426 (Wis. 2020) (emphasis added). *See also Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 795 (7th Cir. 2019) ("The State of Wisconsin has chosen to have an attorney general as its representative, but it also has recently provided a mechanism by which its legislature . . . can intervene to defend the State's interest *in the constitutionality of its statutes*.") (emphasis added); *id.* at 806 ("section 803.09(2m) reflects a sovereign policy judgment that the Attorney General is not the State's exclusive representative in court *when state laws are challenged*") (Sykes, J., concurring) (emphasis added).

That is not the case here. Here, the Wisconsin Legislature seeks to bring an affirmative challenge to a federal statute. There is no question about the validity of any Wisconsin statute at issue in this case. Thus, the default rule under § 165.25(1m) applies, and the Wisconsin department of justice retains exclusive authority to represent the State of Wisconsin.

The Wisconsin Legislature's argument to the contrary is unavailing. It argues that the Legislature can challenge the Tax Mandate because "a Spending Clause penalty that is so coercive as to make the State's passage of a contrary law prohibitive is indistinguishable from a direct violation of state law . . . ." (Doc. 69 at 4.) Thus, according to the Wisconsin Legislature, it *is* representing the State of Wisconsin's "interest in the validity of state laws" by challenging the Tax Mandate. *See Democratic Nat'l Comm.*, 949 N.W.2d at 424. The Court declines to interpret § 803.09(2m) in such a broad manner.

Because the Wisconsin Legislature cannot represent the interests of the State of Wisconsin, it must show that it has or will suffer an injury in fact to itself as an institution. *Cf. Bethune-Hill*, 139 S. Ct. at 1953 (requiring the Virginia House of Representatives to establishing standing in its own right once it was determined that it could not proceed as the State's agent). The Court finds that the Legislature has not established an injury in fact for several reasons. The Legislature asserts that the

Tax Mandate "harms the sovereign dignity of the State of Wisconsin *and its Legislature*" by being unconstitutionally vague and coercive. (Doc. 58 at 11–12 (emphasis added).) But the sovereign is the State, not its legislature. And the ARPA's funds are offered to the States, not to State legislatures. See 42 U.S.C. § 802(b)(3)(A) ("The Secretary shall reserve $195,300,000,000 of the amount appropriated under subsection (a)(1) to make payments to each of the 50 States and the District of Columbia."). States decide whether to accept the money with strings attached, not their legislatures, and if they accept, States must agree to refrain from using the money in contravention of the Tax Mandate, not their legislatures. *See id.* § 802(c)(1) ("... a State ... shall only use the funds provided ...") & (2) ("A State . . . shall not use the funds provided under this section . . .").

The distinction between the State and its legislature may seem minor considering that, in practice, the legislatures certainly play a major role in setting state fiscal policy. But, given the type of constitutional rights asserted in this case, the difference between the two cannot be overstated. *See Warth*, 422 U.S. at 500 (standing turns on the "nature and source of the claim asserted"). As further explained in the merits section of this opinion, the limits placed on Congress's Spending Clause power rest on concerns of federalism and the protection of our nation's dual system of governing. *See Nat'l Fed'n of Indep. Bus.* ("*NFIB*") *v.*

*Sebelius*, 567 U.S. 519, 577 (2012) ("Respecting th[e] limitation [on Congress's ability to secure States' compliance with federal objectives by requiring States' knowing and voluntary acceptance of the terms of a spending condition] is critical to ensuring that Spending Clause legislation does not undermine the status of the States as independent sovereigns in our federal system."). It is the States' unique sovereignty that enables them to have certain rights as "offerees" of the "contracts" Congress is authorized to extend to them pursuant to the Spending Clause. *See, e.g.*, *Pennhurst*, 451 U.S. at 17. Thus, while a State, as the offeree of a Spending Clause contract that is impermissibly ambiguous or coercive, can certainly claim an injury to its sovereign interest in setting its own tax policies, it does not make sense to say that a State legislature, which is not the offeree, can do the same. Given the requirement that a plaintiff must have suffered a "particularized" injury, which means that "the injury must affect the plaintiff in a personal and individual way," *see Lujan*, 560–61 n.1, it thus seems a stretch to say that a legislature can claim the same type of harm—to its right to be offered an unambiguous condition of federal money—that a State can.

The Supreme Court cases addressing the standing of legislative bodies, while not directly on point, further support this Court's conclusion that the Wisconsin Legislature, as an institution, has not suffered an injury in fact by virtue of the Tax

Mandate's enactment. The Supreme Court addressed the standing of a state legislature in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787 (2015). Arizona voters adopted Proposition 106, which amended the Arizona Constitution by removing the Arizona Legislature's redistricting authority and vesting it in an independent commission. *Id.* at 791. The Arizona Legislature sued, alleging that Proposition 106 and the commission's redistricting activities deprived the Legislature of its constitutional authority over redistricting, in violation of the Elections Clause of the U.S. Constitution. *Id.* at 792 (citing U.S. Const. art. I § 4, cl.1). The Supreme Court considered whether the Arizona Legislature had alleged an injury that was sufficiently concrete to meet Article III's standing requirements. *Id*. at 799–800. The Court compared the Legislature's claims with the claims made in two earlier legislative standing cases, *Raines v. Byrd*, 521 U.S. 811 (1997), and *Coleman v. Miller*, 307 U.S. 433 (1939). *Id.* at 801–04.

In *Raines*, the Supreme Court considered whether six members of Congress had standing to challenge the constitutionality of the Line Item Veto Act after they were outnumbered in their votes against it as a bill. 521 U.S. at 814. The Act gave the President authority to cancel certain spending and tax benefit measures after signing them into law. *Id.* The Court observed that the members of Congress did not assert

a personal injury but instead claimed merely "a type of institutional injury (the diminution of legislative power), which necessarily damages all Members of Congress and both Houses of Congress equally." *Id.* at 821. The nature of that injury did not permit the members to claim a "personal stake" in the suit and the alleged injury was not "sufficiently concrete" to establish Article III standing. *Id.* at 830.

On the other hand, in *Coleman*, the Supreme Court recognized the standing of twenty Kansas state legislators who voted against a resolution that ultimately passed only because the Lieutenant Governor cast a tie-breaking vote—a procedure that the legislators argued was impermissible under Article V of the U.S. Constitution. 307 U.S. at 436. The Supreme Court stated in *Raines* that *Coleman* stands "at most . . . for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." 521 U.S. at 823.

The Supreme Court in *Arizona State Legislature* concluded that its facts were more like those in *Coleman* than in *Raines*. 576 U.S. at 803. Proposition 106 "would 'completely nullif[y]' any vote by the Arizona Legislature now or 'in the future,' purporting to adopt a redistricting plan." *Id.* (quoting *Raines*, 521 U.S. at 823–24). Accordingly, the Court concluded, there was a sufficiently concrete injury to the

Arizona Legislature's interest in redistricting that the Legislature had Article III standing. *Id.*

From *Arizona State Legislature*, this Court derives the principle that a legislative body may have standing as an institution so long as its claimed harm serves to "completely nullify" its interest in taking some action that it is legally authorized to take, "now or in the future." *See id.* It is not enough that the legislature's power is diluted; it must be completely lost. *Id.* at 802–04. Here, the application of the Tax Mandate does not nullify any actions that the Wisconsin Legislature would like to take. It may affect them, but it does not render them meaningless. Thus, the Wisconsin Legislature has at most alleged an "abstract dilution of institutional legislative power," rather than a cognizable institutional injury. *See Raines*, 521 U.S. at 826. It therefore lacks standing.

If this Court were to hold differently, it would not find, in any event, that the Wisconsin Legislature may intervene as a matter of right under Rule 24(a)(2). Although the motion to intervene was timely,[4] the Wisconsin Legislature does not

---

[4]   To decide if a motion to intervene is timely the Court considers four factors: (1) the period of time during which the intervenor knew of its interest in the suit before petitioning for intervention; (2) any prejudice the resulting delay might cause the existing parties; (3) any prejudice denial of intervention would cause the intervenor to suffer; and (4) "the existence of unusual circumstances weighing for or against a determination of timeliness." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019). The Wisconsin Legislature moved to intervene approximately six weeks after the Plaintiff States filed their Complaint and roughly one month after they filed their motion for a preliminary injunction. At the

have a "direct, substantial, and legally protectable" interest in the subject matter of this litigation. *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002) ("Under Rule 24(a)(2), a party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable."). The Eleventh Circuit has held that a legally protectable interest "is something more than an economic interest." *United States v. South Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991) (quotation marks and citation omitted). "What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant." *Id.* (quotation marks and citation omitted). Thus, a legally protectable interest is an interest that derives from a legal right. The Wisconsin Legislature has no legally protectable interest in invalidating the Tax Mandate on constitutional grounds because it, unlike the States, has no sovereign right to set its own tax policy.

Nor can the Wisconsin Legislature establish that its interests, if any, would be impaired by the disposition of this action. The Wisconsin Legislature may separately litigate, should it be able to establish its standing using some other theory of harm,

---

time of the Legislature's filing, this Court had "yet to take significant action." *Georgia*, 302 F.3d at 1259–60. Furthermore, the fact that the Legislature intended to raise the same claims as the Plaintiff States, even joining in their existing briefing, indicates that intervention would not "delay the proceedings." *Id.* Additionally, because only seven months have passed since the Wisconsin Legislature sought to intervene, the denial of intervention will not seriously prejudice the Wisconsin Legislature's ability to separately litigate.

and the Eleventh Circuit has noted that the ability to separately litigate defeats the impairment element. *See Worlds v. Dep't of Health & Rehab. Servs., State of Fla.,* 929 F.2d 591, 594 (11th Cir. 1991). Finally, this Court may "presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,* 983 F.2d 211, 215 (11th Cir. 1993). Accordingly, assuming it had standing, this Court would not have allowed the Wisconsin Legislature to intervene as of right pursuant to Rule 24(a)(2).

### 2.    *Permissive Intervention*

Although the absence of standing dooms the Wisconsin Legislature's request to intervene as of right, that does not necessarily command the same result for its request to intervene permissibly under Rule 24(b). It appears to be an open question among the federal courts whether a permissive intervenor is required to possess standing. The Supreme Court's holding in *Laroe Estates* is inapposite because it considered only Rule 24(a) intervenors as of right. *See* 137 S. Ct. at 1651.[5] Long before *Laroe Estates*, the Eleventh Circuit held in *Chiles v. Thornburgh* that "a party seeking to intervene need not demonstrate that he has standing in addition to meeting the

---

[5]    The Court does note, however, that extending the holding in *Laroe Estates* to Rule 24(b) permissive intervention would make sense because, without standing, proposed intervenors could bootstrap their way into ongoing federal litigation.

Page **33** of 54

requirements of Rule 24 as long as there exists a justiciable case or controversy between the parties already in the lawsuit." 865 F.2d 1197, 1213 (11th Cir. 1989).

This Court need not, however, take a position on the standing requirements for permissive intervention because the Court exercises its broad discretion to deny the Wisconsin Legislature's request. Rule 24(b) provides for permissive intervention when an applicant's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b); *Georgia*, 302 F.3d at 1249–50. However, even if a proposed intervenor satisfies the timeliness and common interest requirements, the court may still deny permissive intervention. *Chiles*, 865 F.2d at 1213 (citation omitted). Ultimately, the decision whether a party should be allowed to permissively intervene is left to the district court's "full discretionary powers." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 712 (11th Cir. 1991).

Here, several factors counsel against permissive intervention. The Wisconsin Legislature lacks Article III standing in its own right. It also seeks relief different from the Plaintiff States in the form of an injunction of the Tax Mandate that applies to the State of Wisconsin, of which the Legislature is not a legal representative in this

action. Accordingly, in the exercise of its discretion, the Court declines to permit the Wisconsin Legislature to permissively intervene under Rule 24(b).

## C.    Merits

Having concluded that it has jurisdiction and determined the proper parties to this case, the Court turns to the merits of the Plaintiff States' constitutional challenge. The Plaintiff States claim both that Congress exceeded its authority under the Spending Clause as well as violated the Tenth Amendment's grant of power to the States and the anti-commandeering doctrine when it enacted the Tax Mandate. Because the Court concludes that the Plaintiff States are correct on the first front, it need not address the second. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.") (quoting *Burton v. United States*, 196 U.S. 283, 295 (1905)).

The U.S. Constitution empowers Congress to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. Art. I, § 8, cl. 1. "Put simply, Congress may tax and spend." *NFIB*, 567 U.S. at 537. "Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of

federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474 (1980)).

However, Congress's spending power is not unlimited. *Dole*, 483 U.S. at 207. Although Congress can condition a State's receipt of federal money, any such condition must comply with several requirements. *See id.* at 207–08. First, the condition must "be in pursuit of 'the general welfare.'" *Id.* at 207 (quoting *Helvering v. Davis*, 301 U.S. 619, 640–41 (1937)). Second, Congress must condition the States' receipt of federal funds "unambiguously . . ., enabl[ing] the States to exercise their choice [whether to accept federal funds] knowingly, cognizant of the consequences of their participation." *Id.* (quoting *Pennhurst*, 451 U.S. at 17). Third, the condition must be reasonably related to a "federal interest in particular national projects or programs." *Id.* (quoting *Massachusetts v. United States*, 435 U.S. 444, 461 (1978)). Fourth, no condition attached to receipt of federal funds may violate another provision of the U.S. Constitution. *Id.* at 208. Finally, the Supreme Court has "recognized that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Id.* at 211 (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)). If a federal condition induces a State to act "not of her unfettered will, but

under the strain of a persuasion equivalent to undue influence," then the condition exceeds Congress's Spending Clause authority. *Steward Mach.*, 301 U.S. at 590.

Federalism is the root of these limitations that are placed on Congress's ability to "pay for" States' compliance with federal policies or directives. *See NFIB*, 567 U.S. at 577. As the Supreme Court has recognized in its Spending Clause jurisprudence, the Federal Government possesses only enumerated powers, while the States and the people retain the remainder. *Id.* at 533. *See also* U.S. Const., Amdt. 10. Thus, while the Federal Government "must show that a constitutional grant of power authorizes each of its actions . . . [t]he same does not apply to the States, because the Constitution is not the source of their power." *NFIB*, 567 U.S. at 535. "The States thus can and do perform many of the vital functions of modern government" through their police power, "even though the Constitution's text does not authorize any government to do so." *Id.* at 536–37. State sovereignty both ensures that "powers which 'in the ordinary course of affairs, concern the lives, liberties, and properties of the people' [are] held by governments more local and more accountable than a distant federal bureaucracy," *id.* (quoting The Federalist No. 45, at 293 (J. Madison)), and "serves as a check on the power of the Federal Government [and] protects the liberty of the individual from arbitrary power." *Id.* (quoting *Bond v. United States*, 564 U.S. 211, 222 (2011)).

The Plaintiff States claim that the Tax Mandate is inconsistent with nearly every Spending Clause restriction espoused in *Dole*, *supra*. First, they contend that the mandate is unconstitutionally coercive because the amount of ARPA funding offered to the States is so large a percentage of their annual budgets that they have no real choice but to accept the mandate's restriction on their sovereign taxing powers. Second, they claim that the mandate is unconstitutionally ambiguous because it contains no explanation as to how the Treasury will determine whether a State has—either directly or indirectly—offset its tax cuts with ARPA funds. Thus, the Plaintiff States state that they are unable make an informed choice of whether to accept or decline ARPA funds, and if they accept ARPA funds, whether to cut taxes without putting those ARPA funds at risk of being recouped by the Treasury. Third, they contend that the mandate is not reasonably related to the purpose that the ARPA serves—to assist in the rebound from the COVID-19 pandemic's economic devastation—because prohibiting state tax reductions does not advance the goal of providing economic relief to individuals and entities affected by the pandemic. Finally, they claim that the mandate violates an independent constitutional provision—the Tenth Amendment, which reserves power to the States. Because the Court concludes that the Tax Mandate is an unconstitutionally ambiguous condition on the States' receipt of federal funds, *see Dole*, 483 U.S. at 207; *Pennhurst*, 451 U.S.

at 17, it need not address the Plaintiff States' other concerns. *See Ashwander*, 297 U.S. at 347.

Congress must "speak with a clear voice" "[i]f [it] intends to impose a condition on the grant of federal moneys"—that is, "it must do so unambiguously." *Pennhurst*, 451 U.S. at 17. But how much clarity is required? On the one hand, the Supreme Court has held that the State recipient must be able to "voluntarily and knowingly accept[] the [condition's] terms." *Id.* And there can be no "knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it." *Id.* Put another way, the State recipient must be able to "clearly understand . . . the obligations[.]"). *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). The Eleventh Circuit has similarly stated that Congress must "define [the] conditions clearly enough for the states to make an informed choice." *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004) (citing *Pennhurst*, 451 U.S. at 25).

On the other hand, the Supreme Court has warned that Congress need not "prospectively resolve every possible ambiguity concerning particular applications of a [federal grant] program's requirements." *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 666–69 (1985). According to the Eleventh Circuit, "once Congress clearly signals its intent to attach federal conditions to Spending Clause legislation, it need

not specifically identify and proscribe in advance every conceivable state action that would be improper." *Benning*, 391 F.3d at 1306 (quoting *Sandoval v. Hagan*, 197 F.3d 484, 495 (11th Cir. 1999), overruled on other grounds, *Alexander v. Sandoval*, 532 U.S. 275 (2001)). Congress must only "make the existence of the condition itself— in exchange for the receipt of federal funds—explicitly obvious." *Id.* at 1307 (quotation omitted).

The Plaintiff States argue that the language of the Tax Mandate makes it impossible for States to "make an informed choice," *see id.* at 1306, about the costs of receiving ARPA funds because it is impossible to know how to exercise taxing authority without putting ARPA funds at risk. The Court agrees. The Tax Mandate does not define what it means to "directly or indirectly" offset tax cuts with ARPA funds. *See* 42 U.S.C. § 802(e). Yet Congress gave the Secretary authority to recoup ARPA funds that the Treasury deems were used by a State as a "direct or indirect" offset. *See id.* Money is fungible, *see Holder v. Humanitarian Law Project*, 561 U.S. 1, 37 (2010), meaning "of such a nature that one part or quantity may be replaced by another equal part or quantity in paying a debt or settling an account" or "capable of mutual substitution: interchangeable," http://www.mirram-webster.com/dictionary/fungible. Thus, any ARPA funds the Plaintiff States receive could be viewed as indirectly offsetting any reduction in net tax revenue from a

Case 7:21-cv-00465-LSC   Document 82   Filed 11/15/21   Page 41 of 54

change in state law or policy. After all, a decrease in one part of a State's revenue is necessarily offset somehow to achieve a balanced budget. Thus, there is no way for the Plaintiff States to "clearly understand the[ir] obligations" if they accept ARPA funds. *See Arlington Central*, 548 U.S. at 296.

The Defendants disagree, arguing that once Congress has made explicitly clear that a condition exists, nothing else is required of it. According to the Defendants, Congress need not explain *how* States might tailor their compliance with a condition because imposing such a burden on Congress would be too onerous. Further, the Defendants contend that the major Supreme Court and Eleventh Circuit Spending Clause cases support their position. Although the cases may appear to do so at first glance, a careful reading reveals the opposite to be true.

*Pennhurst*, the origin of the Supreme Court's Spending Clause unambiguity requirement, concerned the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6000 *et seq.*, a federal statute that established a grant program where the federal government provided money to participating States to aid them in creating programs to care for and treat the developmentally disabled. 451 U.S. at 11. The States were given the choice of complying with a variety of conditions set forth in the Act or foregoing the benefits of federal funding. *Id.* The Act also included a "bill of rights" provision specifying that mentally disabled citizens "have a right to

Page **41** of 54

70

appropriate treatment, services, and habilitation for such disabilities" to be provided "in the setting that is least restrictive of the person's personal liberty." *Id.* at 13 (quoting 42 U.S.C. § 6010). A mentally disabled resident of a Pennsylvania mental health treatment hospital brought suit on behalf of himself and other hospital residents against the hospital, alleging that dangerous conditions denied residents various constitutional and statutory rights, including those enumerated in the bill of rights provision of the Act. *Id.* at 6–7.

The Supreme Court had to decide whether the bill of rights provision imposed on participating States an obligation to provide certain kinds of treatment at their own expense by virtue of receiving the federal funds. *Id.* at 10. The Supreme Court held that it did not, stating that the bill of rights provision "represent[s] general statements of federal policy, not newly created legal duties" and "in no way suggests that the grant of federal funds is 'conditioned' on a State's funding the rights described therein." *Id.* at 23. Several factors led the Court to so conclude, including that the bill of rights provision lacked "conditional" language and that under the Act and the implementing regulations, funds were incapable of being withheld from States on the basis of failure to meet the standards in the bill of rights provision. *Id.* The Court also noted that the amount of money Congress granted to Pennsylvania was "woefully inadequate" to meet the "enormous financial burden of providing

'appropriate' treatment in the 'least restrictive' setting" as stated in the bill of rights

provision. *Id.* at 24 (quoting 42 U.S.C. § 1610).

The *Pennhurst* Court further discussed Congress's failure to clearly express

its intent to impose a condition in the bill of rights provision:

> Our conclusion is also buttressed by the rule of statutory construction established above, that Congress must express clearly its intent to impose conditions on the grant of federal funds so that the States can knowingly decide whether or not to accept those funds. That canon applies with greatest force where, as here, a State's potential obligations under the Act are largely indeterminate. It is difficult to know what is meant by providing "appropriate treatment" in the "least restrictive" setting, and it is unlikely that a State would have accepted federal funds had it known it would be bound to provide such treatment. The crucial inquiry, however, is not whether a State would knowingly undertake that obligation, but whether Congress spoke so clearly that we can fairly say that the State could make an informed choice. In this case, Congress fell well short of providing clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with § 6010.

*Id.* at 24–25.

The Defendants contend that *Pennhurst* is distinguishable from this case

because, in *Pennhurst*, the Supreme Court had to decide whether a condition existed

in the first place, but here, there is no question that the Tax Mandate exists as a

condition to States accepting ARPA funds. Indeed, in *Pennhurst*, the requirement

that Congress express unambiguously "its intent to impose conditions on the grant

of federal funds" was to keep Congress from "surprising participating States with

post-acceptance or retroactive conditions." *NFIB*, 567 U.S. at 584 (quoting *Pennhurst*, 451 U.S. at 25). Yet merely because *Pennhurst* stands for the proposition that Congress must clearly state its intent to impose a condition does not mean that Congress need not also *define* the condition sufficiently so that States can know how to comply with it. To the contrary, *Pennhurst* requires Congress to speak "so clearly that . . . the State[s can] make an informed choice." 451 U.S. at 25. *Pennhurst* does not undermine the Plaintiff States' position that the Tax Mandate does not meet that standard.

The Defendants further contend that the Eleventh Circuit's decision in *Benning v. Georgia* forecloses the Plaintiff States' claim that the Tax Mandate is ambiguous. *Benning* concerned whether Congress violated the Spending Clause in enacting section 3 of the Religious Land Use and Institutionalized Person's Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, which requires state prisons that receive federal funds to refrain from burdening the religious exercise of prisoners. 391 F.3d 1299, 1303 (11th Cir. 2004). A Georgia prison system inmate and self-proclaimed "Torah observant Jew" sued Georgia and the Georgia Department of Corrections alleging that they violated the RLUIPA by denying his requests for a kosher diet and for permission to wear a yarmulke. *Id.* Georgia moved to dismiss the suit, arguing among other things that section 3 of RLUIPA was an unconstitutional violation of

Congress's Spending Clause power. *Id.* Section 3 provides that government actions that substantially burden the religious exercise of institutionalized persons must satisfy the "strict scrutiny" standard: the action must be in "furtherance of a compelling government interest" and must be "the least restrictive means of furthering that compelling governmental interest." *Id.* at 1304 (quoting 42 U.S.C. § 2000cc-1). Georgia argued that section 3 is ambiguous, contrary to *Pennhurst*, in four ways, one of which was that Georgia could not know in any particular case whether its actions satisfied the requirements of the strict scrutiny standard. *Id.* at 1305.

The Eleventh Circuit rejected Georgia's argument, pointing out that the strict scrutiny standard, which has "long applied to the states in disputes regarding the free exercise of religion," was "not new to Georgia or any state." *Id.* at 1306 (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1236–37 (11th Cir. 2004)). The court found that RLUIPA's flexibility in giving States "wide latitude in applying its provisions" does not make the statute "opaque." *Id.* It stated, "once Congress clearly signals its intent to attach federal conditions to Spending Clause legislation, it need not specifically identify and proscribe in advance every conceivable state action that would be improper." *Id.* (quoting *Sandoval*, 197 F.3d at 495).

Although Georgia relied upon *Pennhurst* in supporting its argument that section 3 of the RLUIPA is ambiguous, the Eleventh Circuit distinguished *Pennhurst*,

stating, "The federal law in *Pennhurst* was unclear as to whether the states incurred any obligations at all by accepting federal funds, but RLUIPA is clear that states incur an obligation when they accept federal funds, even if the method for compliance is left to the states. *Pennhurst* does not require more." *Id.* at 1307. Recognizing that the Ninth and Seventh Circuits had reached the same conclusion in similar cases, the Eleventh Circuit continued:

> In *Mayweathers* [*v. Newland*, 314 F.3d 1062 (9th Cir. 2002)], the Ninth Circuit stated, "Congress is not required to list every factual instance in which a state will fail to comply with a condition. Such specificity would prove too onerous, and, perhaps, impossible. Congress must, however, make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious." 314 F.3d at 1067. The Seventh Circuit explained, "Congress permissibly conditioned the receipt of federal money in such a way that each State is made aware of the condition and is simultaneously given the freedom to tailor compliance according to its particular penological interests and circumstances." *Charles* [*v. Verhagen*], 348 F.3d [601,] 608 [(7th Cir. 2003)]. No federal appellate court has held otherwise, and we decline to be the first.

*Id.*

There are several reasons why *Benning* does not foreclose the Plaintiff States' ambiguity argument. For one thing, the ARPA's Tax Mandate is nothing like a Congressional spending condition that prohibits States from discriminating based on an individual's religion, as was the case in *Benning*. Although the strict scrutiny standard may result in different applications among the courts, there is no question

that the RLUIPA expressly conditions the receipt of federal money upon States' refraining from creating substantial burdens on prisoners' religious rights that are not justified by a compelling governmental interest and are not furthered by the least restrictive means possible. *See* 42 U.S.C. § 2000cc-1(a). As the Plaintiff States say, every lawyer is familiar with that standard. In contrast, the Tax Mandate that Congress crafted provides *no guidance* on critical interpretive questions. It does not tell States how they can avoid being found to have indirectly offset a net tax revenue reduction with ARPA funds. There is thus no way for States to comply with the ARPA by looking to the text of the provision itself. In other words, the condition is not "define[d] . . . clearly enough," which dooms it under *Benning*. 391 F.3d at 1306.

Additionally, the Court is cautious not to read *Benning* as applying too far outside the scope of spending conditions that prohibit unlawful discrimination. *See Benning*, 391 F.3d at 1306 ("The Supreme Court has explained that so long as a spending condition has a *clear and actionable prohibition of discrimination*, it does not matter that the manner of that discrimination can vary widely.") (emphasis added). Indeed, all of the cases that *Benning* relies upon in support of the conclusion that Congress need not identify in advance very State action that may be improper address spending clause legislation related to federal nondiscrimination statutes. *See Benning*, 391 F.3d at 1306–07 (citing *Sandoval*, 197 F.3d at 495 (spending condition

prohibited discrimination on the basis of national origin in violation of Title VI of the Civil Rights Act of 1964); *Davis v. Monroe County Bd. of Edu.*, 526 U.S. 629, 651 (1999) (spending condition prohibited student-on-student sexual harassment in violation of Title IX of the Education Amendments of 1972); *Mayweathers*, 314 F.3d at 1067 (the same RUILPA spending condition prohibiting religious discrimination that was the subject of *Benning*); *Charles*, 348 F.3d at 607–08 (same)). The common denominator in these cases is that they addressed statutes, like the RLUIPA, that "follow[] in the footsteps of a long-standing tradition of federal legislation that seeks to eradicate discrimination and [are] 'designed to guard against unfair bias and infringement on fundamental freedoms.'" *Charles*, 348 F.3d at 607 (quoting *Mayweathers*, 314 F.3d at 1067)). The Eleventh Circuit in *Benning* recognized the importance of Congress's ability to place conditions on its offers of federal funds to States in this area:

> [T]he United States has a substantial interest in ensuring that state prisons that receive federal funds protect the federal civil rights of prisoners. . . .
>
>> Congress has a strong interest in making certain that federal funds do not subsidize conduct that infringes individual liberties, such as the free practice of one's religion. The federal government also has a strong interest in monitoring the treatment of federal inmates housed in state prisons and in contributing to their rehabilitation. Congress may allocate federal funds freely, then, to

protect the free exercise of religion and to promote rehabilitation. . . .

*Mayweathers*, 314 F.3d at 1067; *see also Charles*, 348 F.3d at 608–09.

*Benning*, 391 F.3d at 1307.[6] Simply put, the Federal Government's paramount interest in protecting individuals from discrimination that was present in *Benning* is simply not present in this case. *See Pennhurst*, 451 U.S. at 18 (reminding courts to "look to the provisions of the whole law, and to its object and policy," in determining whether Congress intended to impose a condition). To the contrary, the Federal Government has *no* interest in proscribing state tax policy. Yet the Tax Mandate dictates more than what States do with federal funds; it dictates what States do with State funds as well. The Tax Mandate's restriction on direct or indirect state tax cuts pressures States into adopting a particular—and federally preferred—tax policy. The inherent ambiguity in the text of the mandate may disincentive the Plaintiff States from considering any tax reductions for fear of forfeiting ARPA funds. This is a federal invasion of State sovereignty that was just simply not at issue in *Benning*.

Accordingly, the Court finds no precedential authority that would proscribe

---

[6]     The *Benning* court made these statements in response to Georgia's argument that the federal grants for its prisons were unrelated to the objective of the RLUIPA in contravention of *Dole*'s requirement that any condition Congress imposes on the States' receipt of federal funds be related to a particular federal interest. *See id.*

its ruling today that Congress exceeded its Spending Clause authority in crafting an unconstitutionally ambiguous spending condition in the Tax Mandate.

Having determined that the Tax Mandate falls short of the clarity required when Congress exercises its powers under the Spending Clause, the Court must now determine what effect, if any, the Final Rule has on the Tax Mandate's failure—as enacted—to meet that requirement. Although the issuance of the Final Rule raises the question whether an administrative regulation can provide the clarity needed for a statutorily ambiguous spending condition to pass muster under the Spending Clause jurisprudence, little discussion is ultimately needed on this point. This is because the Defendants appear to concede that, assuming that the language of the Tax Mandate is itself unconstitutionally ambiguous, the Final Rule cannot cure that ambiguity. (*See* Doc. 76 at 32 ("Both sides agree that agencies cannot impose funding conditions that Congress itself has not attached. . . . Defendants are not asking the Court to defer to the [Final] Rule because Plaintiffs have not challenged it.")).

It bears noting, however, that the Final Rule still fails to define how a State "indirectly offsets" spending cuts with ARPA funds. A State, for example, can cut taxes so long as decreases in revenue are counterbalanced by "[s]pending cuts in areas not being replaced by [ARPA] Funds." 86 Fed. Reg. at 26808. But the Rule does not define "areas." And because the Final Rule "provides benefits across

several areas" due to the breadth with which ARPA funds can be used, *id.* at 26816,

few "areas" of State spending will be suitable candidates for spending cuts that could

offset a decrease in revenue. Further, the Treasury has multiple years during which

it can assess whether "a spending cut is subsequently replaced with [ARPA] Funds

and used to indirectly offset a reduction in net tax revenue resulting from a covered

change." *Id.* at 26810. Thus, a spending cut in 2021 followed by a use of ARPA funds

in 2023 could later be deemed "an evasion of the restrictions of the offset provision"

that would entitle Treasury to recoupment. *Id.* In short, the Final Rule still leaves

States guessing as to how they may exercise their sovereign power to tax.

### D.    Remedies

Having found that the Tax Mandate exceeds Congress's power under the

Constitution, the Court now turns to the remedies sought by the Plaintiff States. The

Plaintiff States request both declaratory relief and a permanent injunction enjoining

the Secretary from enforcing the Tax Mandate provision of the ARPA against the

thirteen Plaintiff States.

#### 1.    Permanent Injunction

A plaintiff who has demonstrated success on the merits is entitled to a

permanent injunction if: (1) it "suffered an irreparable injury"; (2) the "remedies

available at law, such as monetary damages, are inadequate to compensate for that

injury"; (3) the "balance of hardships between the plaintiff and the defendant" justify an equitable remedy; and (4) "the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Plaintiff States satisfy each factor. First, the Tax Mandate has and will continue to inflict irreparable injury on the Plaintiff States, who are all either faced with or bound by an unconstitutionally ambiguous "deal" that is intruding on each State's ability to exercise its "indispensable" sovereign power to tax. *See Gibbons*, 22 U.S. at 199. Second, the States cannot sue the federal government for damages. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Thus, since their harms are not redressable through damages, "the remedies available at law" are "inadequate." *eBay*, 547 U.S. at 391. Third, the balance of hardships favors the States, which have a strong interest in not having their sovereign authority impinged by an unconstitutional law, while the Defendants have no legitimate interest in enforcing that law. Additionally, given the limited scope of the permanent injunction, the Defendants will be free to enforce every other provision of the ARPA. Fourth, an injunction will promote the public interest because "the public . . . has no interest in enforcing an unconstitutional law." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010).

A permanent injunction is proper in this case, as enjoining the enforcement of the Tax Mandate against the Plaintiff States alleviates the constitutional harm.

### 2.   *Declaratory Relief*

The Declaratory Judgment Act provides a federal court with jurisdiction over "a case of actual controversy" the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.'" *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Id.* (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942)). Here, because a permanent injunction fully rectifies the Plaintiff States' harm, the Court need not also issue a declaratory judgment.

## IV.   Conclusion

For the aforementioned reasons, the Plaintiff States' motion for a final judgment and permanent injunction is due to be granted, and the Defendants'

motion to dismiss the complaint is due to be denied. A separate order consistent with this opinion will be issued.

**DONE** and **ORDERED** on November 15, 2021.

_____
L. Scott Coogler
United States District Judge

160704

FILED

2021 Nov-15  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

State of West Virginia, *et al.*,      )
                                        )
      Plaintiffs,            )
                                        )
vs.                                     )          7:21-cv-00465-LSC
                                        )
United States Department of             )
Treasury, *et al.*,                     )
                                        )
      Defendants.            )
                                        )

## FINAL JUDGMENT

As discussed in the accompanying Memorandum of Opinion, the following rulings are hereby made:

1) the Wisconsin Legislature's motion to intervene as a plaintiff in this action (doc. 58) is hereby **DENIED**;

2) the Plaintiff States' motion for a final judgment in their favor (doc. 75) is hereby **GRANTED**;

**3)** Defendant, the Secretary of the Treasury, is hereby **PERMANENTLY ENJOINED** from seeking enforcement of the Tax Mandate, 42 U.S.C. § 802(c)(2)(A), against the Plaintiff States;

4) given that injunction, the Plaintiff States' request for declaratory relief (as argued in doc. 75) is hereby **DENIED**;

1

**5)**   Defendants' motion to dismiss this action (doc. 76) is hereby
        **DENIED**.

Only to the extent provided by law are costs taxed against the Defendants.

**DONE** and **ORDERED** on November 15, 2021.

_____
L. Scott Coogler
United States District Judge

160704

2